289 A.2d 370 (1972)
John P. KARTSONIS, Petitioner,
v.
DISTRICT UNEMPLOYMENT COMPENSATION BOARD, Respondent.
No. 5943.
District of Columbia Court of Appeals.
Argued October 27, 1971.
Decided March 27, 1972.
John P. Kartsonis, pro se.
George A. Ross, Washington, D. C., with whom Russell L. Carter, and Bill L. Smith, Washington, D. C., were on brief, for respondent.
Before GALLAGHER, NEBEKER and YEAGLEY, Associate Judges.
PER CURIAM:
This is a petition for review of a decision of the District Unemployment Compensation Board (the Board). Initially, the claims deputy determined that petitioner should be disqualified from receiving benefits for a five-week period because he had been discharged for misconduct. Petitioner appealed from this determination and a hearing was conducted by an appeals examiner. The examiner found petitioner was discharged due to misconduct for which he was properly disqualified. On appeal to the Board, the case was remanded to the appeals examiner for further proceedings. The Board noted that the captain of waiters who discharged petitioner did not testify at the hearing and remanded the proceeding for the limited purpose of procuring his testimony and affording petitioner the opportunity to cross-examine him. After the second hearing, at which the captain testified, the appeals examiner found again that petitioner was discharged for misconduct and was properly subjected to the disqualification imposed under Section 10(b) of the Act. (D.C.Code 1967, § 46-310(b)). Upon appeal to the Board the decision of the appeals examiner was affirmed.
Petitioner, a waiter who has appeared pro se throughout the proceedings, contends that the employer failed to meet his *371 burden of proving misconduct on his part under the statute; and, additionally, that the testimony against him rested largely on hearsay.
Our review of the record shows that there was adequate evidence to support the Board's decision. It is evident that petitioner was discharged principally because of poor service to the guests, though he had been warned concerning this previously by the management and had the experience to render good service, which he deliberately failed to do. Obviously, good service by waiters is one of the necessary ingredients of a successful restaurant. We believe there was adequate basis for the finding of misconduct within the meaning of the Act and the pertinent Rules and Regulations. While there was some hearsay evidence[1] introduced against him, we conclude that the Board's findings were otherwise supported by substantial evidence and we see no reason to disturb the decision.[2]
The dissent questions the adequacy of the notice to petitioner of the issues upon which the Board turned the case. We think it misconceives the law on notice in administrative proceedings. It is not a plastic concept. Essentially, "the question on review is not the adequacy of the original notice on pleading but is the fairness of the whole procedure." 1 Davis, Administrative Law Treatise § 8.04. See also Kuhn v. Civil Aeronautics Board, 87 U.S. App.D.C. 130, 132-133, 183 F.2d 839, 841-842 (1950). Our review shows that if only as a result of the various stages in the administrative process before the Board, including two hearings before the examiner, petitioner was adequately on notice of the issues.
In short, we believe the Board gave petitioner a fair hearing in its fundamental sense, and seeing substantial support for the findings and no serious error of law, that is as far as we need go in this case.[3]
Affirmed.
NEBEKER, Associate Judge (dissenting):
My disagreement with the disposition of this petition is in two parts. First, the evidence does not sustain the charges of misconduct underlying petitioner's disqualification. As to this point it is clear that petitioner's discharge was based on much more than "poor service to the guests." Thus, the summary treatment of the point by the majority is neither justified nor in accordance with law.
The second point of disagreement relates to the majority's assumed adequacy of the legal standards for determining disqualifying misconduct. The record discloses that the required notice of charged misconduct was inadequate. Moreover, the ultimately determined misconduct was different and far more specific after the proceedings had *372 progressed through two hearings and two appeals to the Board. Even if the test for sufficiency were applied against what the Board finally based its action on, there is inadequate basis to support the decision under previously adopted standards for disqualifying conduct.
With respect to the notice issue, there was some confusion within the Board as to the scope of inquiry on the question of benefit qualification. Although this point is not raised, and certainly not decided here, it may be wise for the Board to consider, in light of recent constitutional decisions, whether it may or should continue to determine de novo that an applicant was guilty of misconduct as charged. Such a determination is not necessarily a part of benefit eligibility under the statutory scheme. An eligibility determination may be made on the basis that the employer discharged the employee in good faith and on substantial evidence of misconduct. With that as the issue, cumbersome but necessary requirements of elaborate due process can be avoided and the Board, an agency of the government, will not be determining fault or misconduct as a part of benefit eligibility.

Sufficiency of the Evidence and Notice
In Hickenbottom v. District of Columbia Unemployment Compensation Board, D.C. App., 273 A.2d 475 (1971), this court, on the unchallenged assumption that the issue was factual misconduct, adopted the generally accepted view that the proved cause for discharge
"`must be an act of wanton or wilful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent, or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer.'" [273 A.2d at 477-478.] [Emphasis supplied.]
On this record I fail to see this degree of malfeasance or nonfeasance on the part of the petitioner. Conceding that petitioner may have been connected with guest complaints and that he may not have been the most efficient waiter, this alone should not have disqualified him from unemployment compensation benefits under a finding of misconduct. The law requires more than "mere inefficiency or unsatisfactory conduct, or a failure in good performance as the result of inability or incapacity, or errors in judgment or discretion committed in good faith." 81 C.J.S. Social Security and Public Welfare § 162, at p. 246 (1953). See also Payne v. Antoine's Restaurant, 217 So.2d 514 (La.Ct.App.1969) (evidence that employee was argumentative not sufficient to sustain a finding of "misconduct"); Maywood Glass Co. v. Stewart, 170 Cal.App.2d 719, 339 P.2d 947 (1959) (conduct in violation of repeated warnings was held insufficient to amount to "misconduct"); Boynton Cab Co. v. Neubeck, 237 Wis. 249, 296 N.W. 636 (1941) (mistake in judgment or discretion was insufficient to find "misconduct"). In spite of these reservations regarding the sufficiency of the evidence in establishing the required wilful misconduct, deficiencies in the notice given the petitioner of the issues to be determined at the hearing are blatant enough that the evidentiary question need not be reached.
Petitioner filed an application for unemployment compensation benefits and listed as the reason for his discharge: "Fired  they said guests had complained about my service." The claims deputy, after conferring with the former employer, determined that petitioner would be disqualified from receiving benefits for a five-week period because he had been discharged for misconduct. The reasons given for this determination, *373 as near as we can tell from the record,[1] were:
"You were discharged for a violation of employer rules. Complaints from guests about your service after warnings by the President of the organization, Mr. Giesinger."
Petitioner responded to this adverse determination in a notice of appeal wherein he stated:
"[T]o my knowledge I have never violated any rules. I have never had a legitimate complaint from a guest in any place I ever worked. Mr. Giesinger has never warned me of any violations."
With petitioner having only this knowledge and notice of the issues to be determined, the hearing was commenced by the appeals examiner.
At the hearing, the reasons given for discharge went beyond "guest complaints" and included such things as difficulty in working with others, discrepancies in dividing gratuities, asking guests for tips, and failure to cooperate with superiors. Evidence relating to the "guest complaints" was not specific and was largely based on hearsay.[2] The employer's vice president testified that it was because of a guest complaint that he instructed the captain of the waiters to discharge petitioner at the conclusion of his last evening of work. Petitioner's claim for benefits was denied by the appeals examiner because
"[t]he claimant had been repeatedly warned that he would have to improve his service to the employer's guests. He failed to improve although he had, through experience, the ability to do so. He also knew that it was a violation of his employer's rules to request tips from guests. These violations of rules constituted misconduct for which he was properly disqualified."[3]
The findings of the appeals examiner indicate that the reasons for disqualification must have been "failure to improve" and "requesting tips from guests." Neither of these reasons had been originally stated as the basis for disqualification at the time the exiguous notice had been given the petitioner.
On appeal to the Board the case was remanded for further proceedings. The Board was particularly concerned with defining the issues for determination. It stated:
"Claimant maintained throughout the hearing that he was not apprised of any acts of misconduct at the time of his discharge.
". . . The Appeals Examiner must be alert to the need of protecting the rights encompassed by `fair hearing' for all parties particularly the claimant when he is not represented by counsel and may not be relied upon to define all of the issues and to offer complete proof of his actions."
The Board also held that the minimum requirements of due process would dictate that petitioner have the opportunity to cross-examine the captain of the waiters who discharged him. The Board concluded by stating: "The captain who discharged *374 the claimant should appear and testify as to what acts of misconduct the Claimant is charged with."
At the remand hearing additional matters were considered relating to the reasons for discharge.[4] The actual cross-examination of the captain of the waiters revealed that the captain had previously witnessed a complaint from a guest regarding petitioner's request for a tip. However, the captain added no further testimony relating to the incident of the evening of the discharge. He only stated that the vice president had told him to fire the petitioner.
The appeals examiner found that petitioner had been discharged for known violations of employer's rules and that the evidence from the hearings when taken together was sufficient to disqualify the petitioner from unemployment compensation benefits. The Board in affirming the examiner's decision listed several facts it deemed adequate to justify the employer discharging the petitioner. The Board said:
"The employer's testimony reveals that claimant had given poor service to guests and that many complaints had been brought to the employer's attention about claimant's behavior in the performance of his duties. . . . Among other charges alleged is that claimant had asked guests for tips, a party of guests left the dining room because of poor service, and he resented carrying out orders from his supervisors.. . . The record tends to reveal that the charges preferred against claimant were from an accumulation of complaints that had been occurring over a period of time. . ." [Emphasis supplied.]
In addition, it branded petitioner as "argumentative [in] nature" with "a proclivity for bickering." The alleged reasons for discharge as listed by the Board go far beyond the "guest complaints" of which the petitioner was given notice at the time the formal proceedings to determine unemployment compensation began. Many of these reasons cannot be sustained, and thus neither can the benefit disqualification. See S. E. C. v. Chenery Corp., 318 U.S. 80, 94-95, 63 S.Ct. 454, 87 L.Ed. 626 (1943).
The Board basically operates under the guidelines set forth in D.C.Code 1967, § 46-311(b), which provides in pertinent part:
"The claimant and other parties to the proceedings shall be promptly notified of the initial determination or any amended determination and the reasons therefor.. . . If, subsequent to such initial determination, benefits with respect to any week for which a claim has been filed are denied for reasons other than matters included in the initial determination, the claimant shall be promptly notified of the denial and the reasons therefor, and may appeal therefrom in accordance with the procedure herein described for appeals from initial determinations." [Emphasis supplied.]
Proper notice of initial determinations or later adverse determinations based on different reasons must be given the claimant. Such notice of determination and reasons obviously should be made with sufficient clarity to apprise the claimant of the grounds for any resulting disqualification.
These procedures are amplified by the District of Columbia Administrative Procedure Act and its provisions relating to notice. Woodridge Nursery School v. Jessup, D.C.App., 269 A.2d 199 (1970). The requirements of notice are set forth in D.C. *375 Code 1967, § 1-1509(a) (Supp. IV, 1971), which provides in part:
"In any contested case, all parties thereto shall be given reasonable notice of the afforded hearing by the Commissioner or Council or the agency, as the case may be. The notice shall state the time, place, and issues involved,. . ." [Emphasis supplied.]
This statute plainly requires that the claimant in an unemployment compensation case should be apprised of all issues to be determined at the unemployment compensation hearing. See also Lee v. Brown, 148 So.2d 321, 323 (La.Ct.App.1963); Washington v. Administrator, 125 So.2d 27 (La.Ct.App. 1960). Cf. Palace Restaurant, Inc. v. Alcoholic Beverage Control Board, D.C.App., 271 A.2d 561 (1970).
In the instant case it appears that the petitioner has been required to defend on vague assertions of misconduct which were remolded and reshaped at the hands of the employer and the Board as the proceedings progressed. From the record it is clear that the Board failed in its responsibility to adequately set forth the issues to be determined at the hearing.

Scope of Inquiry
The appeals examiner and the Board appear to have been somewhat confused respecting the scope of inquiry under the relevant statute, D.C.Code 1967, § 46-310(b). The predominant view was that the Board should inquire whether petitioner was or did as the employer charged. But the Board also said, in remanding for a further hearing, "[W]e are not saying the discharge was improper. This is a matter within the reasonable discretion of the management." [Emphasis supplied.] To the extent that such view of the scope of inquiry by the Board may have been intended to mean that the issue to be determined was whether the employer had reasonable cause, or substantial evidence of misconduct, the history of § 46-310 lends support.
The original provisions of the bill proposing the Unemployment Compensation Act for the District of Columbia (H.R. 7167) stated regarding discharge for misconduct:
"§ 7(6) Discharge for misconduct: An employee who has been discharged for proved misconduct connected with his employment . . . ." [Emphasis supplied.] 79 Cong.Rec.8281 (1935).
This version was rejected by the Senate.
After Senate revisions the following version, which is substantially unlike most state statutes[5] regarding discharge for misconduct, was adopted:
"§ 10(b) An individual who has been discharged for misconduct occurring in the course of his work,[6] proved to the satisfaction of the Board, . . ." [Emphasis and footnote supplied.] 79 Cong.Rec. 13397 (1935).
Although no history reflecting the reason for change can be gleaned from the Congressional Record or hearing reports, a literal reading of the two versions would suggest that the purpose of the change was to permit the Board to determine that something less than actual fault or guilt would "satisfy" the Board.
The purpose of the unemployment compensation system is not one of finding fault or punishing the employee. Legislative history of the Unemployment Compensation Act reveals:
"We must remember that, although the rather severe word `disqualification' is used . . ., we are not dealing with *376 the punishing of wicked conduct. In fact, a very large part of what passes as grounds for disqualification may involve highly debatable situations with little fault on the part of the claimant.. . . [T]he purpose of the system is not to set up a series of rewards and punishment for right and wrong but to provide systematic protection against unemployment for the families and children of breadwinning workers." Hearings on S. 1163 and S. 1835 Before the Subcomm. on Public Health, Education, Welfare and Safety of the Senate Committee on the District of Columbia, 84th Cong., 1st Sess., at 7 (1955).
Thus, it appears that Congress may have been willing to permit the Board to settle upon a scope of inquiry short of actual "fault"[7] based on charges of misconduct in order to more quickly and with less complication resolve the primary question of whether the employee and his family should be extended the benefits of the systematic protection provided for them.[8]See Hickenbottom v. District of Columbia Unemployment Compensation Board, supra. Cf. Spaulding v. Florida Industrial Commission, 154 So.2d 334 (Dist.Ct.App.Fla. 1963); Ciufo v. Brown, 148 So.2d 459 (La.Ct.App.1963); Boynton Cab Co. v. Neubeck, supra. Of course, once the scope of inquiry in determining benefit eligibility is settled, the "[f]indings of fact and conclusions of law shall be supported by and in accordance with the reliable, probative, and substantial evidence." D.C.Code 1967, § 1-1509(e) (Supp. IV, 1971).
In my view the Board should re-examine its notice procedures and recent case law with a view toward arriving at a more workable scope of inquiry than one aimed at determining whether a given applicant was in fact a bad employee, a drunk, or thief, or whatever the "charges" may be. See footnote 7, supra. A lesser standard seems compatible with the statutory scheme and purpose.
I respectfully dissent.
NOTES
[1] Hearsay evidence is, of course, admissible in administrative hearings if it is of a reliable and probative nature.
[2] We might say in passing, however, that while we are sympathetic to the problems of a hearing examiner in conducting a hearing where the affected party appears pro se, and is not a lawyer, the examiner should insist continuously that those appearing before him comply with the procedural rudiments of a quasi-judicial hearing. By this we mean, primarily, the hearing should be regulated so those appearing confine themselves to direct and cross-examination of the witnesses, and legal argument where appropriate. In these circumstances, the examiner may well lend prudent assistance in the ascertainment of the facts.
[3] We note that, in respect to its discussion of the "Scope of Inquiry" in the latter part of the opinion, the dissent reaches for a question not presented and proceeds to render an advisory opinion on it. We seriously question the practice of rendering advisory opinions on important and potentially far-reaching questions, and expressly separate ourselves from the content of the one in this dissent. If nothing else, rendering advisory opinions on unbriefed and not presented questions with serious implications is a risky proposition, especially when it is unnecessary for the decision.
[1] The handwritten entry is nearly illegible. Other entries made by the claims deputy on the claim record card cannot be deciphered. The Board should ensure that usable and correct records of initial determinations and hearings are maintained not only for their own review but for the courts' as well.
[2] While probative hearsay may be admitted in administrative proceedings, the evidence presented must still be of sufficient weight to prove allegations. See D.C.Code 1967, § 46-311(c), which requires the appeals examiner to "use due diligence to ascertain the true facts of the case."
[3] We cannot tell what "rules" of the employer were violated other than a single instance of requesting a tip from a guest. Moreover, petitioner was not discharged until some weeks after this instance. It does not appear that anyone considered the employer to have a "rule" respecting failure to improve.
[4] Some of the irrelevant matters at this hearing were actually brought out by petitioner  further emphasizing the inadequacy of the notification of the precise issues to be determined at the hearing.
[5] The statutes of Virginia, Iowa, and California compare most closely to the District of Columbia's statute in this aspect.
[6] Amended to read "in the course of his most recent work" on June 4, 1943. See D.C.Code 1967, § 46-310(b).
[7] In Wisconsin v. Constantineau, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971), the Supreme Court, in reviewing relevant cases dealing with attaching a "badge of infamy", held that the individual involved should be protected by the standards of notice and procedural due process. The Court said:

"Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential. . . ." [Id. at 437, 91 S.Ct. at 510.]
Of course, as the potential stigma becomes more severe the requirements of the hearing become more formal and protective. Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). Cf. Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971); Greene v. McElroy, 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959); Bland v. Connally, 110 U.S.App. D.C. 375, 293 F.2d 852 (1961).
[8] In another context Congress expressly intended that the administration of the Unemployment Compensation Act not become complex or unwieldy. See S. Rep.No.1255, 75th Cong., 1st Sess. 5 (1935), where Senate revisions of H.R. 7167 included the striking of a House provision for computing benefits "because of its administrative unworkability." Cf. Richardson v. Perales, 402 U.S. 389, 406, 91 S.Ct. 1420, 28 L.Ed. 2d 842 (1971).