Alma TEEGARDEN *v.* DIRECTOR,
Arkansas Employment Security Division

CA 79-28                                      591 S.W. 2d 675

Opinion delivered December 12, 1979
Released for publication January 9, 1980

*Kenneth R. Smith,* for appellant.

*Herrn Northcutt,* for appellee.

JAMES H. PILKINTON, Judge. This is an unemployment compensation case. The claimant has appealed the determination of the Arkansas Employment Security Board of Review holding her ineligible for benefits under the provisions of the Arkansas Employment Security Act. The agency had first determined that claimant was not considered unemployed. She was a school employee who did not normally work during the summer vacation, and expected to return to her job in the fall. On appeal, the Board of Review found that claimant was, in fact, unemployed within the meaning of the act, but was nevertheless ineligible for benefits under the provisions of Section 4 (c) of the Arkansas Employment Security Law. The Board specifically found that claimant was not doing those things that a reasonably prudent person would do to seek suitable work, as required by the statute.

Section 4 (c) of the Arkansas Employment Security Law provides that claimants will be eligible for benefits if they are unemployed, physically and mentally able to perform suitable work, available for such work, *and doing those things that a reasonably prudent individual would be expected to do to secure work.* (Emphasis added.)

In *Terry Dairy Products Company, Inc. v. Cash, Commissioner of Labor,* 224 Ark. 576, 275 S.W. 2d 12 (1955), the Arkansas Supreme Court held that the findings of fact made by the Board of Review in cases of this nature are conclusive on appeal if supported by substantial evidence. Therefore, the question here is whether there is substantial evidence to support the determination of the Board of Review. It is clear from a study of the record that there is such substantial evidence. The record reflects that claimant had worked for the same employer as a teacher's aide since about

1976. Since that time, the program has been suspended for the summer months only. The program was expected to resume again in early fall of 1979, and the claimant said that she planned and intended to return. However, she also testified that she was currently looking for and would accept other full time work. If she can find suitable work, she might not choose to return to this employer. But the evidence shows she has not worked during the past summers she has been off. It is a very close question, based on this record, as to whether claimant was, in fact, properly considered unemployed within the meaning of the act; however, the Board of Review resolved that issue in her favor, and claimant does not, of course, complain of that ruling. She does complain of the secondary finding of the Board that although "unemployed" she is still ineligible because of her lack of effort to find work. Claimant-Appellant is now represented by counsel who raises certain procedural points. It is claimed, for example, that appellant came before the hearing referee prepared to prove that she was, in fact, unemployed within the meaning of the act, which she did. Claimant says she understood this to be the only issue on appeal and had no idea the matter of her effort to seek work would also be reviewed. The notice of hearing which claimant received plainly stated, however, that "the hearing (before the referee) may involve any question having a bearing on the claimant's right to benefits up to time of the hearing". She had been previously advised of what effort she would be expected to make in seeking suitable employment. It should be noted, too, that claimant was only declared ineligible for benefits from April 30, 1979 up to and including the date of the hearing, June 12, 1979. If there was any misunderstanding about the matter in her mind, surely she was fully informed by the decision below so she could make the required effort, thereafter, if she was actively seeking employment.

If appellant was misled in any way by the notice of the setting of hearing before the examiner-referee, she still had an opportunity to raise the point before the Board of Review, which she did not do. She did, however, in her request for appeal to the Board of Review submit a detailed list of all contacts she had made since filing her application. In view of this list, which was before the Board of Review, the pro-

cedural error, if any, was harmless. Appellant placed before the Board of Review everything she then wished to have in the record. We are at a loss to know what additional evidence she could present on the point (of her efforts seeking work during the period involved) if this case was remanded. Appellant's counsel has not enlightened us as to what additional facts he seeks to present on remand. Under those circumstances, it would be useless to remand this case for further evidence as to appellant's effort seeking work during the period involved.

AFFIRMED.

NEWBERN, J., dissents.

DAVID NEWBERN, Judge, dissenting. The appellant was denied unemployment compensation by her local unemployment compensation division (ESD) agency because she was found to be "not unemployed" within the meaning of § 4 (c) of the Unemployment Compensation Act. Ark. Stat. Ann., 81-1105 (c) (Repl. 1976). She appealed that determination to the administrative appeals tribunal, and the notice to her of the appeal hearing was a printed ESD form which said, "[t]he primary issue involved is:" followed by a space in which was typed, in letters somewhat larger than the printing, "To determine if claimant is unemployed within the meaning of Section 4 (c) of the Arkansas Employment Security Law." The printed matter resumed at the bottom of the page, approximately one half inch below the typewritten insert: "You are notified that the hearing may involve any question having a bearing on the claimant's right to benefits up to the time of the hearing."

At the hearing some questions were asked the appellant by the appeals tribunal referee with respect to her efforts to obtain work during the period she alleged she was unemployed. The referee was the sole determiner of fact and law, there being no other members of the "tribunal." Without telling the appellant the reason he was asking about the appellant's efforts to obtain employment or otherwise indicating he was considering a question of the adequacy of her efforts, the referee concluded she was unemployed but had

not tried hard enough to find work. The decision of the agency denying compensation was thus effectively affirmed but on a basis entirely different from that invoked by the agency, and with utter lack of meaningful opportunity for the appellant to prepare to defend her claim on that basis.

The appellant thereafter appealed further to the board of review. She sent a handwritten list of places she had sought employment which ended, "and I've called other places."

On another printed, or otherwise mechanically reproduced, form the board of review simply affirmed the appeals tribunal. No mention was made in the board's decision or opinion of the appellant's handwritten submission partially listing places she had sought employment. Nor was any mention made of the switch of bases for denial by the appeal tribunal. We have no idea whether these matters were considered by the board which affirmed with a mechanical reference to "the written record and the previous testimony."

This appellant has suffered a flagrant denial of fundamental fairness in the assessment of her claim. The majority relies heavily on the "fine print" in the notice to her. Even had the notice to her not directed her most specifically to the issue whether or not she was "unemployed" within the meaning of the act, the notice would have been too vague and too broad. 1 Davis, *Administrative Law Treatise,* § 805, p. 530 (1958). *Cf., Anderson* v. *Industrial Commission,* 29 Colo. App. 263, 482 P. 2d 403 (1971). See also, *Lee* v. *Brown,* 148 So. 2d 321 (La. App. 1963).

Administrative due process requires either proper notice of the issues to be heard or a basis to find an intelligent waiver. *Lewis* v. *Hot Shoppes & Fla. Industrial Commission,* 211 So. 2d 20 (Fla. App. 1968). The Supreme Court of Vermont dealt with this question in *Kaufman* v. *Department of Employment Security,* 136 Vt. 72, 385 A. 2d 1080 (1978). The claimant had filed for compensation and was refused by a claims examiner and the appeals referee on the ground she had been discharged for misconduct. This was the reason cited by the referee in his notice to the claimant. Subsequently, the claimant appealed to the board of review

which determined she had not been discharged for misconduct but rather she left her job voluntarily and without good cause. In reversing the board, the court said:

> The hearing before the Board could encompass only the issues framed by the pleadings. The correctness of the claims examiner's and the appeals referee's findings that appellant had been discharged for misconduct was the only issue submitted to the Board for its determination. When the board departed from this issue and concluded that appellant's employment was terminated by voluntary quit without giving notice to the appellant that such a conclusion was being considered, it deprived appellant of the opportunity to make a countervailing argument. This was a denial of a fair hearing. [385 A. 2d at 1082]

Even cases which tend to deemphasize the notice requirement say the entire proceeding must be evaluated from the point of view of fairness to the claimant. *Kartsonis* v. *District Unemployment Compensation Board*, 289 A. 2d 370 (D.C. 1971). If the appellant before us was entitled to rely on the specific disqualification found by the agency and stated in the notice to her, the change of issues was unfair. If she was not so entitled, the notice was too broad. Either standard would require reversal in this case.

The majority also emphasizes the partial listing of places to which the appellant had applied for employment. They say this makes error, if any, harmless. We must bear in mind that this appellant, as most others, appeared at the hearing and throughout her quest until she came before the court, without counsel. She needed and was entitled to the assistance of the appeals referee to draw from her a complete presentation of her case. Instead, she received an inquiry with respect to an issue she had little if any reason to expect and a decision of her case outside her presence. Her handwritten missive to the form-prone board of review was a lame substitute for an open inquiry into her overall entitlement to compensation.

I intend this dissenting opinion to apply in several cases

other than this one in which I will make reference to it. I chose this case to express my dissatisfaction with these Arkansas ESD practices because it probably is the one case, among several currently before us, which is least objectionable, so the remarks here should apply at least with equal strength in the cases in which I incorporate them by reference.

It is apparently easy for an administrative agency to slip, unintentionally, into a high-handed and complicated procedure in administering the "governmental largess." Over ten years ago, Charles Reich made the point, with some erudition, that we must treat this form of wealth distribution as affecting and effecting property rights. Reich, The New Property, 73 *Yale L. J.* 733 (1964). We are hearing ESD appeals mostly in cases where citizens can afford to appeal pro se only. Lest the citizenry lose faith in the substance of the system and the procedures we use to administer it, we can ill afford to confront them with a government dominated by forms and mysterious rituals and then tell them they lose because they did not know how to play the game or should not have taken us at our word.

In 1937 Chief Justice Charles Evans Hughes said:

The maintenance of proper standards on the part of administrative agencies in the performance of their quasi-judicial functions is of the highest importance and in no way cripples or embarrasses the exercise of their appropriate authority. On the contrary, it is in their manifest interest. For, as we said at the outset, if these multiplying agencies deemed to be necessary in our complex society are to serve the purposes for which they are created and endowed with vast powers, they must accredit themselves by acting in accordance with the cherished judicial tradition embodying the basic concepts of fair play. [*Morgan* v. *United States*, 304 U.S. 1, 58 S. Ct. 999 (1937)]

Forty two years would seem enough to have learned this small lesson. This case should be remanded to the board for a further hearing with proper notice to the appellant of the questions to be considered.