## Charles LINSCOTT *v.* DIRECTOR OF LABOR

E 82-311                                     653 S.W.2d 150

Court of Appeals of Arkansas
Opinion delivered July 6, 1983

*M. E. Reger,* for appellant.

*Bruce H. Bokony,* for appellee.

MELVIN MAYFIELD, Chief Judge. This is an unemployment compensation case.

Appellant, who had been employed to construct sets for the Eureka Springs Passion Play for eight seasons, was discharged on April 5, 1982, because he failed to give notice of his commitment for the 1982 season and missed a cast registration meeting a few days prior to termination.

Appellant filed for compensation benefits, and the agency determined he was disqualified under Section 5 (b) (1) for misconduct in connection with the work. Ark. Stat. Ann. § 81-1106 (b) (1) (Repl. 1976). He appealed and the Appeal Tribunal affirmed the agency disqualification.

On appeal to the Board of Review, the board found that appellant voluntarily quit his job without good cause connected with the work when he advised the employer he

was looking for other work and would not make a commitment for the 1982 season. The board modified the tribunal decision and disqualified appellant from receipt of benefits under Section 5 (a). Ark. Stat. Ann. § 81-1106 (a) (Supp. 1981).

On appeal to this court the appellant contends that he was denied due process and a fair hearing by the board's disqualification on a different ground than that contained in the hearing notice and considered at the tribunal hearing.

Appellant argues that he and his paralegal representative attended the tribunal hearing prepared to refute the misconduct charge and that the hearing was confined to that issue. He says if he had been specifically informed in advance that voluntary quit would be an issue for consideration before the board, he would have presented evidence on the events of the day of his discharge, rather than only that concerning his failure to attend the registration meeting. He maintains that he would have called as witnesses two other employees who were also discharged the same day, and contends that only upon his receipt of the decision of the board was he aware that the issue was whether he voluntarily quit.

Appellant distinguishes the decision of *Teegarden* v. *Director*, 267 Ark. 893, 591 S.W.2d 675 (1980), where we allowed the injection of a new issue at the tribunal level on a finding that it was harmless error. Appellant contends that *Teegarden* was premised on our findings that the appellant there still had the opportunity to raise the point involved before the board and could submit additional evidence to cure the procedural error. But here, the appellant says, under our decision in *Mark Smith* v. *Everett*, 6 Ark. App. 337, 642 S.W.2d 320 (1982), a claimant no longer has the opportunity to submit additional evidence to the board for consideration, therefore, curing error in the manner suggested in *Teegarden, supra,* is no longer possible.

Other jurisdictions have grappled with the problem of the injection of new issues at administrative levels in unemployment compensation cases. In a case factually

similar to that at bar, *Kaufman* v. *Dept. of Employment Security*, 136 Vt. 72, 385 A.2d 1080 (1978), the agency and appeals referee disqualified the claimant for a misconduct discharge and the board disqualified claimant for a voluntary quit without good cause. The Vermont court held that the hearing before the board could encompass only the issues framed by the pleadings and when the board departed from the misconduct issue without notice to the claimant, it deprived her of the opportunity to make a countervailing argument. The court held there that this denied claimant the fair hearing mandated by statute and caselaw and remanded the case for further proceedings.

The Pennsylvania Board of Review in *Libonate* v. *Commonwealth Unemployment Compensation*, 426 A.2d 247 (Pa. Commw. Ct. 1981), changed the issue of the claimant's failure to accept suitable work to removal from the job market. The court stated that the board may consider issues delineated in the notice of hearing, expressly ruled on by the referee, and raised by agreement of the parties, but held that the claimant was denied an effective opportunity to be heard on the determinative issue of her unavailability for work when the board disqualified her on a ground different from that relied upon and considered in the referee's decision.

In a line of Oregon cases, *Publishers Paper Co.* v. *Morgan*, 498 P.2d 798 (Or. Ct. App. 1972), *Kuraspediani* v. *Employment Division*, 590 P.2d 294 (Or. Ct. App. 1979), and *Swezey* v. *Employment Division*, 615 P.2d 1103 (Or. Ct. App. 1980), the Oregon Court of Appeals has held that neither the hearing officers nor the board has jurisdiction to consider grounds not asserted in the party's request for hearing or the agency's notice of hearing, and that the injection of new issues for the first time at the board level denies the party the opportunity to be heard, is improper, and ground for reversal.

We think that the rationale of these cases applies to the situation in the instant case. Here, the injection of the voluntary quit issue for the first time in the board's decision effectively denied appellant proper notice of the disputed

issue, the opportunity to subpoena witnesses on his behalf, to confront and cross-examine adverse witnesses, and to present rebuttal evidence on the voluntary quit issue. In short, appellant was denied the minimum requirements of due process of law mandated by *Leardis Smith* v. *Everett*, 276 Ark. 430, 637 S.W.2d 537 (1982), and by *Mark Smith* v. *Everett, supra.*

The decision of the board is reversed and remanded for further proceedings consistent with this opinion and as authorized in Ark. Stat. Ann. § 81-1107 (d) (3) (Repl. 1976).