Walter C. MOORE *v.* Phil Price, DIRECTOR

E 94-231                                                    914 S.W.2d 318

Court of Appeals of Arkansas
En Banc
Opinion delivered January 31, 1996

*Walter C. Moore,* pro se.

*Allan F. Pruitt*, for appellee.

JUDITH ROGERS, Judge. This is an appeal from a decision of the Board of Review disqualifying appellant from receiving unemployment compensation benefits. The Board held that appellant was discharged for misconduct connected with the work. This appeal comes to us without benefit of briefs being filed by either party. We affirm.

Both the Agency and Appeal Tribunal in this case denied benefits based on a finding that appellant had voluntarily quit his job without good cause connected with the work pursuant to Ark. Code Ann. § 11-10-513(a)(1) (1987). The Board also denied benefits, but modified the appeals referee's decision by finding that the appellant had been discharged for misconduct pursuant to Ark. Code Ann. § 11-10-514(a)(1) (1987). In *Linscott* v. *Director*, 9 Ark. App. 103, 653 S.W.2d 150 (1983), the Agency and Appeal Tribunal determined that the appellant was disqualified for the receipt of benefits for misconduct connected with the work. The Board of Review, however, denied benefits on the ground that appellant had voluntarily quit his job without good cause connected with the work. We agreed with the argument presented in the appeal and held that it was a denial of due process for the Board to disqualify a claimant on a different ground than that contained in the hearing notice. Consequently, we reversed and remanded for further proceedings.

Here, as in *Linscott*, the Board denied benefits on a ground different from that of the Agency and Appeal Tribunal. However, the decision in *Linscott* does not compel reversal of this case. Fundamental to the decision in *Linscott* was the appellant's claim that the issue to be litigated was confined to the charge of misconduct, and his assertion that he and his legal representative had only prepared and presented evidence pertinent to that one issue. Under those circumstances, we determined that the injection of the voluntary quit issue for the first time in the Board's decision effectively deprived the appellant of notice and the opportunity to defend and be heard on the alternative ground raised by the Board. By contrast, the record in this case demonstrates that the Board's finding that appellant was discharged for misconduct was within the framework of contested issues. The hearing notice plainly states that the "primary issue(s) involved

are: Whether the claimant voluntarily left, was discharged or suspended from last work and whether the circumstances of the separation entitle the claimant to unemployment benefits within the meaning of Ark. Code Ann. 11-10-513 and/or 514." Indeed, the appeals referee framed the issues as such in her opening remarks. Furthermore, it was the appellant's position that he had been discharged as reflected by his testimony: "I was laid off. I did not quit." In sum, the record, without any doubt, reflects that the issues before the Board were whether appellant was entitled to benefits, or whether he was disqualified for either voluntarily quitting without good cause or for being discharged for misconduct. On this record, it cannot plausibly be argued that the Board exceeded the parameters of the defined issues. This case simply does not present a situation where the Board disqualified a claim for benefits on a ground unanticipated by the claimant. Therefore, we hold that appellant was not denied due process.

■ After a careful and thorough review of the record, we find no error in the Board's decision and further conclude that it is supported by substantial evidence.

Affirmed.

MAYFIELD and ROBBINS, JJ., and BULLION, S.J., dissent.

MELVIN MAYFIELD, Judge, dissenting. I respectfully dissent from the majority opinion in this case. In the first place, I think the decision of the Board of Review was reached under circumstances that were fundamentally unfair. And in the second place, I think that in pro se appeals to this court from the Board of Review it is our duty to see that the Board complies with the rules of procedure and decides the cases in keeping with the law and the evidence.

The first reason for my dissent is based on the failure of the majority opinion to apply the law in *Linscott v. Director*, 9 Ark. App. 103, 653 S.W.2d 150 (1983), to the present case. In *Linscott* the appellant's claim for unemployment benefits was denied by the agency on the basis that he had been discharged for misconduct in connection with his work. His disqualification was affirmed upon appeal to the Appeal Tribunal. However, on appeal to the Board of Review, the Board denied benefits on the

basis that he had voluntarily quit his job without good cause connected with the work. On appeal to this court, we held:

> Here, the injection of the voluntary quit issue for the first time in the board's decision effectively denied appellant proper notice of the disputed issue, the opportunity to subpoena witnesses on his behalf, to confront and cross-examine adverse witnesses, and to present rebuttal evidence on the voluntary quit issue. In short, appellant was denied the minimum requirements of due process of law .
> . . .

9 Ark. App. at 105-06, 653 S.W.2d at 151 (citations omitted).

*Linscott* was a unanimous decision of this court, sitting en banc. The decision was later cited by a Missouri Court of Appeals, along with cases in other states, to support that court's holding that "many other courts" have found that this situation violates due process. *See Wilson* v. *Labor and Industrial Relations Commission*, 693 S.W.2d 328, 330 (Mo. App. 1985). Moreover, one of the Oregon cases cited in *Linscott* has been cited again by that court as authority for holding that an appeal to an Appeals Board must be remanded where the Board decided the case on an issue presented for the first time in the appeal to the Board. *See Cascade Corporation* v. *Employment Division*, 800 P.2d 305 (Or. App. 1990). And the Vermont case cited in *Linscott* has been relied upon for another similar decision in that state. *See Call* v. *Department of Employment Security*, 138 Vt. 52, 411 A.2d 1336 (1980).

However, the majority opinion in the present case seeks to distinguish this case from *Linscott* and the rule followed in the above cited cases, on the basis that "the record in this case demonstrates that the Board's finding that appellant was discharged for misconduct was within the framework of contested issues." I must, with due respect, vigorously disagree.

The record in this case shows that on February 8, 1994, the appellant filed a "Claimant's Statement Concerning Discharge" in which he stated that he had received a letter discharging him from work and was told his discharge would be considered a voluntary quit. On February 18, 1994, the employer wrote a letter to the Employment Security Division stating that appellant

"voluntarily quit without attributable cause to the employer," and the "Employer Response" dated February 21, 1994, to the agency request for additional information states that the appellant "quit."

The agency cited Ark. Code Ann. § 11-10-513(a)(2) (1987), under which one who voluntarily leaves work is disqualified for benefits until he has 30 days covered employment, and denied appellant benefits on the basis that he left work without good cause connected with the work. Appellant appealed to the Appeal Tribunal and the Appeal Tribunal held that "the determination of the Agency denying the claimant benefits under Ark. Code Ann. § 11-10-513 is affirmed."

The appellant then appealed to the Board of Review, and the Board's opinion cited a different section of the Employment Security Law — Ark. Code Ann. § 11-10-514(a) (1995 Supp.) — and held that the appellant was disqualified "for misconduct" under that section and could not receive benefits "for a period of eight (8) weeks, of unemployment . . . ." I think it is clear that the Board was wrong in using section 11-10-514 to find appellant guilty of misconduct when he had only been charged with having voluntarily left work without good cause under section 11-10-513.

At the hearing on appellant's claim, the referee said that "the Agency determined this to be a voluntary quit," and Robert Gant, who appeared in behalf of the employer, testified they considered that appellant "voluntarily quit." Gant testified further that Ron Arney verbally offered appellant light duty work on August 20 and appellant refused.

Appellant testified that he did not quit; that he was "laid off"; and that "they told me that I quit July 15th, which was incorrect." Appellant said that he had injured his knee, but he did not remember being offered "light duty"; that Arney told him that "he would get back" with him; and the "next thing I know, I got a letter stating that I had voluntarily quit." He testified further that he never told anyone he quit; that "all of a sudden" he no longer had a job; and that he wanted to know why he was "terminated."

Under these circumstances, I do not believe the misconduct

issue was "within the framework of contested issues." The employer continuously claimed that the appellant had voluntarily quit. The agency held that the appellant had voluntarily quit. The issue that was contested before the referee was whether the appellant had voluntarily quit. And the referee affirmed the agency finding that the appellant had voluntarily quit. Therefore, I believe that the only issue before the Board of Review was whether the appellant had voluntarily quit. When the Board departed from that issue and found that the appellant had been discharged for misconduct, that determination was made on an issue which was not before the agency, the Appeal Tribunal, or the Board.

It is true that Ark. Code Ann. § 11-10-525(a)(2) (1987) provides:

> Upon review on its own motion or upon appeal, and on the basis of evidence previously submitted in the case, or upon the basis of such additional evidence as it may direct to be taken, the board may affirm, modify, or reverse the findings and conclusions of the appeal tribunal or may remand the case.

The above provisions were quoted in *Brown Jordan* v. *Dukes*, 269 Ark. 581, 600 S.W.2d 21 (Ark. App. 1980) (at that time the provisions were Ark. Stat. Ann. § 81-1107(d)(3) (Repl. 1976)), and the court said, "we interpret 'previously submitted' to mean submitted in some previous hearing at which either party would have an opportunity to question or support." 269 Ark. at 583, 600 S.W.2d at 23. Because the "additional evidence" in that case had not been "previously submitted" the court reversed the decision of the board and "remanded for the taking of further evidence." We amplified the "additional evidence" point in *Jones* v. *Director*, 8 Ark. App. 234, 650 S.W.2d 601 (1983), when we said, "We think that phrase means additional evidence directed to be taken at some hearing, conducted by the board or someone designated by the board, at which witnesses could appear and opportunity for cross-examination could be afforded." 8 Ark. App. at 236, 650 S.W.2d at 603. The action of the Board in allowing or refusing to allow additional evidence to be taken is discretionary, and we have affirmed the Board where it remanded the case to the Appeal Tribunal for the taking of addi-

tional evidence, *Edwards* v. *Stiles*, 23 Ark. App. 96, 743 S.W.2d 12 (1988), and where it refused to remand for that purpose, *Arkansas Game & Fish Commission* v. *Director*, 36 Ark. App. 243, 821 S.W.2d 69 (1992). The controlling issue, however, in the decision to remand for the taking of additional evidence is stated in *Maybelline Co.* v. *Stiles*, 10 Ark. App. 169, 174, 661 S.W.2d 462, 465 (1983), as whether "each side has notice of and a fair *opportunity* to rebut the evidence of the other party."

So, in the case at bar, the issue is the right to a fair hearing before the Board of Review. The Appeal Tribunal found that appellant voluntarily quit work without good cause, but on appeal the Board found that he was discharged for misconduct. There was no way for him to know that the Board was even going to consider the misconduct issue. The specific question involved is whether it was fundamentally fair for the Board to consider the misconduct issue without notice to appellant and opportunity to produce evidence on that issue.

It is therefore important to note that the petition for review in this court was filed on September 19, 1994. Although it was filed on a form designed for appeal to the Board of Review, it was filed within 20 days after it was mailed on August 31, 1994, and qualified as a timely petition for appeal to this court. There is a question on the form asking if the appellant has additional evidence to present, and it was checked by appellant. This certainly indicates that after he received the Board's decision mailed to him on August 31, 1994, the appellant wanted to present additional evidence on the misconduct issue. As we did in *Linscott*, and as other courts have done in similar situations, I think we should remand this case to the Board of Review with directions that it either decide the single issue of whether the appellant voluntarily quit work without good cause in connection with that work, or that the Board remand to the Appeal Tribunal for it to allow the parties an opportunity to introduce additional evidence and cross-examine witnesses on the discharge-for-misconduct issue. This will enable the Board to apply the law set out in Ark. Code Ann. § 11-10-525(a)(2) (1987) in a way that is fundamentally fair to all parties.

I also want to comment upon a point that was mentioned in our discussion in conference on this case. That point concerns

our duty and responsibility in unemployment compensation cases appealed pro se to the Arkansas Court of Appeals. Before this court was established and started to function in July of 1979, these cases were appealed to the circuit court and then to the Arkansas Supreme Court. Section 2 of Act 252, enacted by the Arkansas General Assembly in 1979, codified as Ark. Code Ann. § 11-10-529 (1987), provided for appeals from the Board of Review to be made directly to the Arkansas Court of Appeals, and the Emergency Clause of that Act stated that "the present system of judicial review has not been adequate to insure the prompt and final determination of the issues involved in such matters and, as a result, there has been undue delay to the prejudice of the State and the parties involved." A computer printout reveals that almost 200 such published cases have been appealed to the Court of Appeals in the almost 16 years since this court was established. From 1935 to 1979, a total of almost 45 years prior to the establishment of this court, a computer printout reveals less than 100 such cases were appealed from circuit court to the Arkansas Supreme Court. Therefore, it would seem that the direct appeal to this court has also provided a more accessible method for the review of the decisions of the Board of Review.

From the beginning of the operation of this court we have recognized that most of the appeals from the Board of Review were pro se, and we have treated these appeals in a somewhat different manner. For example, in *Hunter* v. *Daniels*, 2 Ark. App. 94, 616 S.W.2d 763 (1981), we said:

> We first consider the Board's Rule 9 argument. While it is true that Hunter's brief did not meet the requirements of that rule, we hold that it was not required to do so. Our Rule 7(a) requires the filing of briefs in all civil cases. We have not heretofore treated petitions for review from the decisions of the Board of Review as cases in which briefs are required. It is rare when appellants in unemployment benefit cases are represented by counsel. It is even rarer when we are furnished anything other than a transcript of the proceedings on appeal. We have not treated unemployment benefit cases the same as other civil cases under our Appellate Rules. Accordingly, we hold that appellant is not required to

abstract the record under Rules 7 or 9 of this court since this appeal involves an unemployment benefit case.

2 Ark. App. 96, 616 S.W.2d 765.

In *Smith* v. *Everett*, 6 Ark. App. 337, 642 S.W.2d 320 (1982), a pro se case, we stated in a supplemental opinion on denial of rehearing as follows:

> In Employment Security cases, the Board of Review, appeal tribunals and special examiners are not bound by common law, statutory rules of evidence or by technical rules of procedure, but any hearing or appeal before such hearing officers must be conducted in a manner to ascertain the substantial rights of the parties. Ark. Stat. Ann. § 81-1107(d)(4) (Repl. 1976) [now Ark. Code Ann. § 11-10-526(a)(1) (1987)]. Here, the appellee urges us to adopt a rule which would impose a duty on the parties to formally interpose objections in order to preserve a record for an appeal to this Court. If we required the parties to formally object or proffer evidence to preserve a record for appeal purposes, we would be imposing a duty contrary to that envisioned by the Arkansas General Assembly when it enacted § 81-1107(d)(4). We believe it would be fundamentally unfair to adopt such a rule in this type case. Parties in Employment Security cases are rarely represented by attorneys, and the records on review often reflect clear errors that affect the substantial rights of the parties. The appeal tribunals and the Board of Review are mandated by law to conduct hearings and appeals in a manner to ascertain the substantial rights of the parties. If they fail to do so, we have a correlative duty to remand these cases to require it to be done.

6 Ark. App. at 339A-339B, 642 S.W.2d at 322.

In summary, I do not think that the legislature provided for this court to have direct appeals from the Board of Review in order for us to simply summarily affirm the Board's decision. I think we are supposed to give these cases a close inspection whether or not the parties are represented by attorneys. My view in this regard was ably expressed in a dissent written by now Justice David Newbern when he was a judge on the Court

of Appeals:

> It is apparently easy for an administrative agency to slip, unintentionally, into a high-handed and complicated procedure in administering the "governmental largess." Over ten years ago, Charles Reich made the point, with some erudition, that we must treat this form of wealth distribution as affecting and effecting property rights. Reich, The New Property, 73 Yale L.J. 733 (1964). We are hearing ESD appeals mostly in cases where citizens can afford to appeal pro se only. Lest the citizenry lose faith in the substance of the system and the procedures we use to administer it, we can ill afford to confront them with a government dominated by forms and mysterious rituals and then tell them they lose because they did not know how to play the game or should not have taken us at our word.

> In 1937 Chief Justice Charles Evans Hughes said:

> The maintenance of proper standards on the part of administrative agencies in the performance of their quasi-judicial functions is of the highest importance and in no way cripples or embarrasses the exercise of their appropriate authority. On the contrary, it is in their manifest interest. For, as we said at the outset, if these multiplying agencies deemed to be necessary in our complex society are to serve the purposes for which they are created and endowed with vast powers they must accredit themselves by acting in accordance with the cherished judicial tradition embodying the basic concepts of fair play. [*Morgan* v. *United States*, 304 U.S. 1, 58 S.Ct. 999 (1937)].

> Forty two years would seem enough to have learned this small lesson. . . .

*Teegarden* v. *Director*, 267 Ark. 893, 899, 591 S.W.2d 675, 678 (Ark. App. 1979).

I would reverse the decision of the Board of Review and remand this case for further proceedings in keeping with this dissent, and I regret that the appellant, who is without the bene-

20

fit of legal counsel, will probably not know that he can file a petition asking that the Arkansas Supreme Court review the decision reached by the three to three vote of the judges who participated in this case.

BRUCE T. BULLION, Special Judge, dissenting. I agree with Judge Mayfield and Judge Robbins and vote to reverse and remand this case to the Board of Review so it may arrange for a hearing upon the question of work-related misconduct. I remain neutral of opinion on that portion of Judge Mayfield's written dissent regarding the intention of the General Assembly concerning our review in unemployment compensation appeals. I would reverse and remand this case to the Board of Review.

ROBBINS, J., joins in this opinion.