Argued and submitted October 11, 1999, reversed and remanded with instructions
April 5, 2000

James P. ANDREWS,
*Petitioner,*

*v.*

EMPLOYMENT DEPARTMENT
and Jeld-Wen,
a corporation,
*Respondents.*

(98-AB-1938; CA A103761)

998 P2d 769

Lee S. Werdell argued the cause for petitioner. With him on the brief was Werdell & Hanson.

Kirk S. Peterson argued the cause for respondent Jeld-Wen, Inc. With him on the brief were David J. Riewald and Bullard, Korshoj, Smith & Jernstedt.

Mary H. Williams, Assistant Solicitor General, waived appearance for respondent Employment Department.

Before Landau, Presiding Judge, and Linder and Brewer, Judges.

BREWER, J.

**BREWER, J.**

Claimant seeks review of a final order of the Employment Appeals Board (EAB) denying his claim for unemployment compensation benefits. Claimant argues that EAB erred, as a matter of law, in concluding that he was discharged pursuant to a reasonable drug testing policy adopted by employer and, further, in concluding that claimant's refusal to take a drug test on his own time, without compensation, constituted an act disqualifying him from eligibility for unemployment compensation benefits following his resulting discharge. ORS 657.176(9). We review for substantial evidence and errors of law. ORS 183.482(8). For the reasons set forth below, we reverse and remand.

The following facts are taken from EAB's findings and are supported by substantial evidence in the record. Claimant worked for employer from 1993 until he was terminated on June 16, 1998. At the time of his termination, claimant worked as a salvage cutter, sorting and cutting unusable wood. He used chop saws and other power tools in the performance of his work. On June 15, claimant talked to another employee during a production meeting. The manager asked claimant twice to be quiet and listen to the presentation, but claimant continued talking. In response to the manager's remonstrance, claimant told him that the conversation was none of the manager's business. The manager then told him to shut up and pay attention. The manager considered claimant's behavior to be unusual workplace conduct. After the meeting, the manager issued claimant a written reprimand for insubordination.

Employer's substance abuse policy, which has been in effect since 1989, provides that employer has "reasonable cause" to request an employee drug test when

> "work performance and work patterns; physical symptoms or conditions; absenteeism and personal health; *verbal or written warnings*; concentration, and/or social interaction on the job indicate the possible influence of drugs or alcohol." (Emphasis in original.)

The policy further specifies that any employee refusing to submit to testing is subject to immediate discharge. Claimant

received a copy of the policy on his initial employment in November 1993.

At the time he issued the written warning to claimant, the manager had claimant return to work but told claimant that he had to submit to a drug test after work that afternoon. When claimant asked if he would be compensated for his time in taking the test, the manager told him that he had to take the test on his personal time. Claimant replied that he would take the test during work hours or, if paid, after work hours, but stated that he would not take the test off duty without pay. The manager refused those conditions, and claimant did not take the test. When claimant reported to work the following day, employer discharged him for failing to take the test.

Claimant applied for unemployment compensation benefits following his discharge. Claimant appealed from an adverse administrative decision and was awarded benefits following a hearing before an administrative law judge (ALJ). Employer then sought EAB review of the ALJ's decision. EAB reversed the ALJ's decision, concluding that claimant was not entitled to benefits because he violated the terms of a reasonable drug testing policy by refusing to submit to testing under the conditions required by employer. Claimant petitioned this court for review.

In his first assignment of error, claimant contends that EAB erroneously concluded that employer's substance abuse policy was reasonable. Among other things, claimant argues that employer "did not have reasonable grounds to test [c]laimant * * *." Claimant asserts that employer's policy is unreasonable because employer "tests every employee who receives a disciplinary action, either verbal or written, for whatever reason." Claimant notes that his supervisor had no "safety concerns or suspicion of drug abuse by claimant."

■ EAB provided the following reasoning for its conclusion:

> "The employer required claimant to submit to drug testing because he received a written warning for insubordination. The employer's substance abuse policy specifies that the employer has reasonable cause to test an employee for

drugs if the employee receives an oral or written warning which indicates the possible influence of drugs or alcohol. The employer gave claimant a written warning for insubordination on June 15, 1998, after claimant behaved in a disruptive manner unlike his usual conduct in the workplace. Accordingly, reasonable grounds existed to test claimant pursuant to the terms of the employer's drug policy.[2]

---

[2] As set forth in *Terrance E. Webb*, EAB Precedential Decision 96-AB-876, issued April 16, 1996, an employer must follow the terms of its own drug policy before a drug test can constitute grounds for disqualification from unemployment insurance benefits. In the present matter, employer deemed claimant's receipt of a written warning as the result of his unusual behavior at work on June 15 to meet its substance abuse policy criteria with regard to what constituted reasonable ground to test claimant for drugs. The employer's interpretation of its own policy as to whether claimant's behavior constituted sufficiently unusual conduct to indicate the possible influence of drugs is reasonable."

Claimant contends that EAB's conclusion is at odds with ORS 657.176(9) and OAR 471-030-0130(5)(a)(A). ORS 657.176(9) provides:

"(a)   For the purposes of subsection (2) of this section [pertaining to disqualification from the receipt of unemployment compensation benefits], an individual is considered to have committed a disqualifying act when the individual fails to comply with the terms and conditions of a reasonable policy established by the employer, which may include blanket, random, periodic and probable cause testing, that governs the use, sale, possession or effects of controlled substances or alcohol in the workplace.

"(b)   [Employment Department] shall adopt rules to carry out the provisions of this subsection."

OAR 471-030-0130(5), adopted by the Employment Department pursuant to ORS 657.176(9)(b), provides, in part:

"(a)   An employer has reasonable grounds for drug testing when the employer has an objective reason to believe the employee is under the influence of the illegal use

of drugs [*sic*]. The following provide examples of objective reasons for believing an employee is under the influence of the illegal use of drugs [*sic*]:

"(A) Bizarre behavior at work[.]"

Claimant contends that, under the statute and the foregoing rule, employer lacked any objective reason to believe that he was under the influence of illegal drugs. Employer responds that claimant's argument concerning OAR 471-030-0130-(5)(a)(A) is unpreserved. Employer's argument lacks merit. Claimant asserted in his written argument to EAB that employer did not have reasonable grounds to test claimant because there was no evidence of drug or alcohol use and no evidence of impairment, citing that rule. Claimant's attorney also made that argument at the hearing before the ALJ. We conclude that claimant's argument is preserved.

■ On the merits, employer contends that it was not required to have any objective reason to believe that claimant was under the influence of illegal drugs, because OAR 471-030-0130(5)(c)(A) permits testing under the circumstances presented in this case, regardless of whether the employer has any objective reason to believe that an employee is under the influence of illegal drugs. OAR 471-030-0130(5) provides, in part:

"(c) An employer has reasonable grounds for drug testing, including random, periodic or blanket testing, when the employer has a written policy on drug testing and has published or provided the policy to its employees at the time of hire or at least 30 days prior to testing, and:

"(A) The employee, if affected or impaired at work by the illegal use of drugs, could or would pose a significant danger to himself or herself or others[.]"

Employer suggests that, for employees who perform dangerous jobs and thus could be subjected to a policy of random, blanket or periodic drug testing under subsection (5)(c), a drug testing policy that may not satisfy the "probable cause" criterion of subsection (5)(a) must nonetheless be deemed "reasonable"—even if it subjects employees to drug testing that is not random, blanket or periodic testing. Employer's implicit premise is that if *suspicionless* random,

blanket or periodic testing is permissible under subsection (5)(c), then testing for any cause whatsoever must also be permissible. EAB adopted different reasoning in concluding that employer's policy was reasonable under subsection (5)(c):

> "We disagree with the ALJ's interpretation of OAR 471-30-130(5)(c) as limiting testing to random, periodic, or blanket testing. The language of [subsection (5)(c)] specifies that such types of testing are included in the range of drug testing to which the provisions of [subsection (5)(c)] apply. The use of the word 'including' indicates that random, periodic, and blanket testing are not intended to comprise the entire range of testing which an employer may conduct pursuant to [subsection (5)(c)]. We are persuaded that [subsection (5)(c)] also permits testing for cause."

As explained below, we conclude that EAB's analysis, whether or not sound, does not advance the resolution of the parties' dispute. However, we first explain our disagreement with employer's argument.

ORS 657.176(9) refers only to four types of "reasonable polic[ies]" for drug testing, "blanket, random, periodic and probable cause testing." The first three types of testing are suspicionless testing, which will be applied in a like manner to all employees subject to the policy. Only the fourth type, "probable cause" testing, permits an employer to single out a specific employee for testing based on his or her conduct. Contrary to employer's supposition, it does not follow that, merely because a policy that allows suspicionless blanket, random, or periodic drug testing may be deemed "reasonable," a policy that allows employers to target individual employees for drug testing for *any* reason also must be deemed "reasonable."

The Employment Department rules also specifically address only the four types of testing mentioned in ORS 657.176(9). Under the Department's rules, it is clear that an employer's testing policy must be one of the four types that the rules specifically describe, or it must be a policy that is

deemed "reasonable" under the criteria stated in OAR 471-030-0145(1)(d). That rule provides that if an employer's policy is not one of the types addressed by the rules, then the policy is nonetheless deemed "reasonable if failure to comply with the employer's policy would result in a disqualification from unemployment insurance benefits based on application of OAR 471-030-0038 [the general 'misconduct connected with work' rule]." Employer does not contend that its policy should be deemed reasonable under OAR 471-030-0145(1)(d). We therefore reject employer's premise that, regardless of whether or not it has reasonable individualized grounds for drug testing, its policy can nevertheless be deemed "reasonable" simply because it is applied to an employee who might otherwise have been subjected to random, periodic, or blanket testing pursuant to OAR 471-030-0130(5)(c), had the employer adopted a policy for such testing.

We next turn to EAB's analysis. Although we do not endorse EAB's conclusion that subsection (5)(c) governs probable cause testing, for three reasons it is not necessary to decide whether that conclusion is correct. First, subsection (5)(c)(A), the rule on which employer relies, governs employers' policies for testing under circumstances in which employees, if impaired by drugs, could pose a significant danger to self or others. Employer's policy, however, is not the type of policy described in OAR 471-030-0130(5)(c). Employer's policy does not purport to govern only the testing of employees in positions that involve "significant danger" but, instead, applies in all circumstances where performance, symptoms, or warnings, "indicate the possible influence of drugs."

Second, EAB does not suggest that, even if probable cause testing were authorized under subsection (5)(c), the standard for determining whether a policy permitting such testing is reasonable would be substantively different from the criteria governing determination of the existence of reasonable grounds for drug testing under subsection (5)(a). In fact, there is no logical reason to assume that a less demanding standard would apply to a policy deemed reasonable under subsection (5)(c). As explained below, the facts of this case do not support testing under that standard.

■     In a fallback argument, employer urges that it was authorized to require claimant to test under the standard adopted in subsection (5)(a) of the rule. Employer points out that the manager testified that claimant's talking during the meeting was "unusual," and argues that the manager's testimony supports EAB's legal conclusion that "claimant's behavior was sufficiently unusual conduct to indicate the possible influence of drugs or alcohol." *See* OAR 471-030-0130(5)(a)(A) (listing "bizarre behavior at work" as an example of objective reason to believe an employee is under the influence of drugs). We disagree. That testimony cannot be viewed out of context.

At the hearing, after claimant's manager testified that claimant was issued a warning for insubordination, the following exchange took place:

"Q:   Okay. And do they have to take a drug test after that?

"A:   Yes, any violation of company policies or incidents or accidents, we require a drug test."

When asked about whether he had reason to believe claimant was under the influence of drugs, the manager testified:

"A:   I didn't speculate on his drug use, no. I did tell him that as a part of his verbal warning, the drug policy was — was mandatory."

Later, the manager testified:

"A:   No, there was no reason [claimant] couldn't continue his shift [after receiving the warning].

"Q:   Okay. So he— he didn't have any— there was no indication of drug impairment or— or safety problems for that two to two-and-a half hour period of time [after the warning was issued, but before claimant was supposed to be tested for drugs], was there?

"A:   No, there was not.

"Q:   Okay. And you didn't have any reason— you had no reason to believe that he was drug impaired at that time, did you?

"A:   No, I did not.

"Q:   The only reason you had for asking him to take the drug [test] was because there had been a violation write-up, is that correct?

"A:   Correct."

Thus, the remark that claimant's behavior was "unusual" was made by the same manager who testified that he had no personal belief and saw no indication that claimant was under the influence of drugs and who testified that the sole reason for requiring the drug test was that it was company policy to do so after an employee was issued a reprimand. The same manager had claimant return to work without immediate testing after the triggering incident occurred, even though claimant worked with power tools. Viewed in context, the manager's testimony that claimant's behavior was "unusual" cannot support an inference that employer had any reason to believe that claimant was under the influence of drugs.

Because employer's policy, as applied to claimant, was not reasonable under ORS 657.176(9) and the regulations of the Employment Department, claimant was not disqualified from unemployment benefits for his refusal to submit to drug testing.

Reversed and remanded with instructions to enter order allowing benefits.