Argued and submitted November 14, 2000, affirmed April 4, 2001

# HOFFMAN CONSTRUCTION CO.,
*Petitioner,*

*v.*

# EMPLOYMENT DEPARTMENT
and Norman W. Anderson,
*Respondents.*

(99-AB-1505; CA A108110)

21 P3d 1098

David H. Wilson argued the cause for petitioner. With him on the opening brief were Daniel R. Barnhart and Bullard, Korshoj, Smith & Jernstedt.

Jas. Jeffrey Adams, Assistant Attorney General, argued the cause for respondent Employment Department. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

No appearance by respondent Norman W. Anderson.

Before Landau, Presiding Judge, and Linder and Brewer, Judges.

BREWER, J.

Linder, J., concurring.

## BREWER, J.

Employer petitions for judicial review of a decision of the Employment Appeals Board (EAB) that claimant was entitled to receive unemployment benefits. Employer asserts that EAB erred in several respects by concluding that employer did not test claimant pursuant to a reasonable pre-employment drug testing policy and that claimant's act of adulterating his urine sample therefore did not constitute misconduct connected with work. We review EAB's legal conclusions for errors of law and its factual findings for substantial evidence. ORS 183.482(8). For the reasons discussed below, we affirm.

We state the facts as found by EAB. Claimant went to work as a general laborer for employer on Friday, March 26, 1999. At the time of his hire, claimant was given a copy of employer's drug policy, which is described below. Claimant started work at 7:00 a.m. on March 26 and was sent to a designated testing facility to submit a urine sample for drug testing. Claimant provided a urine sample, then reported to the job site and worked through that day. On Monday, March 29, claimant again reported to work. On the same day, the drug testing facility notified employer that the urine sample had been adulterated with nitrites, which can mask the presence of marijuana metabolites. The testing facility was unable to conduct a verification test because of the nitrites.

When employer found out that the March 26 urine sample was adulterated, it gave claimant a second opportunity to take the test. Claimant provided a second urine sample on March 29. The testing facility discovered that that sample was also contaminated with nitrites. Because of the nitrites, the testing facility again was not able to provide employer with an accurate report. Employer received those results from the testing facility on March 31 and then discharged claimant for violating employer's drug and alcohol policy by providing an adulterated urine sample for the second test.

Claimant sought unemployment benefits, which were allowed by Employment Department. Employer sought a hearing, arguing that claimant was disqualified from

receiving benefits because he failed to comply with employer's reasonable drug policy. At the hearing, claimant admitted to adulterating the second urine sample with Klear (a commercial product containing nitrites), acknowledged that he might also have adulterated the first sample, and further admitted that he had used marijuana several weeks before the tests. At the hearing, employer also sought to introduce into evidence certain documents pertaining to claimant's consent to the testing, but the hearings officer excluded the documents on the ground that employer failed to provide copies of the documents to claimant before the hearing. The hearings officer concluded that claimant was entitled to benefits. Employer requested review before EAB, which concluded that claimant was entitled to benefits. EAB concluded that claimant was discharged for his adulteration of the urine sample provided on March 29 but that that drug test was not given pursuant to a reasonable employer drug policy under ORS 657.176(9). Alternatively, EAB reasoned that, even if employer had reasonable grounds for testing claimant on March 29, employer failed to establish that its policy required an employee to provide an unadulterated urine sample.

Employer appeals, asserting that EAB erred in concluding that the March 29 test was not a pre-employment test conducted pursuant to a reasonable employer drug policy, that it erred in concluding that the policy did not prohibit adulteration of urine samples or that adulteration of urine samples was not "misconduct connected with work" under ORS 657.176(2), and that it erred in upholding the hearings officer's decision to exclude certain documents from evidence on the ground that claimant did not receive them before the hearing.

■■ We begin with employer's evidentiary argument. At the hearing, which was conducted by telephone, employer sought to introduce certain exhibits into evidence, including drug testing consent forms that claimant signed. The hearings officer rejected the exhibits on the ground that claimant had not received them. Employer ascertained that Federal Express had attempted to deliver them the day before the hearing but was unable to do so. Employer argues that, because employer had attempted to have the documents

delivered to claimant before the hearing, the hearings officer abused his discretion in excluding the exhibits and that EAB erred in upholding the hearings officer's decision in that regard. The hearings officer did not abuse his discretion in rejecting documents that not only had not been received in advance by the claimant but that claimant did not have an opportunity to review at all, because the hearing was conducted by telephone. In any event, as best we can ascertain, employer presented testimony that dealt with the same subject matter as the rejected exhibits. Thus, we conclude that, even if the hearings officer had erred in rejecting the exhibits, that error was harmless.

■     We turn to the merits of employer's argument. ORS 657.176(9) provides:

"(a)   For the purposes of subsection (2) of this section, [1] an individual is considered to have committed a disqualifying act when the individual fails to comply with the terms and conditions of a reasonable policy established by the employer, which may include blanket, random, periodic and probable cause testing, that governs the use, sale, possession or effects of controlled substances or alcohol in the workplace.

"(b)   The department shall adopt rules to carry out the provisions of this subsection."

OAR 471-030-0130(5)(c) provides, in part:

"An employer has reasonable grounds for drug testing, including random, periodic or blanket testing, when the employer has a written policy on drug testing and has published or provided the policy to its employees at the time of hire or at least 30 days prior to testing, and:

"(A)   The employee, if affected or impaired at work by the illegal use of drugs, could or would pose a significant danger to himself or herself or others[.]"

OAR 471-030-0130(6)(d) provides that "[n]o test administered after the worker actually begins work (the performance of services) shall be considered a pre-employment test." OAR 471-030-0145(1) provides, in part:

---

[1] ORS 657.176(2) provides the grounds for which an individual may be disqualified from receipt of benefits.

"For purposes of ORS 657.176(9), when an individual is discharged or suspended as a result of failing to comply with a reasonable employer policy related to the use, sale, possession or effects of controlled substances or alcohol in the workplace, the individual has committed a disqualifying act and is not qualified to receive unemployment insurance benefits."[2]

In the present case, EAB noted that employer has an established drug and alcohol policy and that it discharged claimant for violating that policy. It therefore reasoned that the legal issue was whether employer's drug and alcohol policy was reasonable under OAR 471-030-0130. EAB held:

"The employer's drug policy allows the employer to test an employee for drugs pre-employment, following an incident involving an injury or property damage, and post-employment when the employer has reasonable cause to believe that an employee is or may be under the influence of drugs. The employer did not show that claimant was tested for drugs because he was involved in an incident that resulted in injury or property damage or because reasonable cause existed to believe that he was, or might be, under the influence of drugs. The employer also failed to provide persuasive evidence that the drug test claimant took on March 29, 1999, was a pre-employment drug test.

"The employer's drug and alcohol policy specifies that pre-employment screening tests will be given prior to the employee reporting for work. The policy defines 'employee' to mean any individual who actually performs job site work on a project for the employer. The employer did not test claimant for drugs prior to claimant reporting for work. The employer considered claimant to be an employee as of the time he reported to the work site at 7:00 a.m. on March 26, 1999. Claimant performed job site work for the employer

---

[2] OAR 471-030-0145(1)(d) further provides:

"If the employer's policy is not specifically addressed in this rule, or in the provisions of OAR 471-030-0130 [concerning drug testing] or OAR 471-030-0140 [concerning alcohol testing], the employer's policy related to the use, sale, possession or effects of controlled substances or alcohol is reasonable if failure to comply with the employer's policy would result in a disqualification from unemployment insurance benefits based upon application of OAR 471-030-0038."

OAR 471-030-0038, cross-referenced in OAR 471-030-0145(1)(d), is the general misconduct rule and implements ORS 657.176(2).

prior to the March 29 drug test. Further, the consent form that claimant signed before taking the test specified that claimant was agreeing to provide urine specimens in compliance with the post-employment provisions of the employer's drug policy. Accordingly, the drug test that the employer required claimant to take on March 29 was not a pre-employment test for purposes of the employer's own drug and alcohol policy.

"Because the drug test that the employer required claimant to take on March 29, 1999, was not a pre-employment test or a post-incident test, and did not fit the provisions of the employer's policy on post-employment testing, the employer did not have reasonable grounds to test claimant pursuant to the terms of its own policy."

EAB concluded that, because an employer must follow the terms of its own drug policy before the policy can serve as a ground for disqualification for benefits, claimant was entitled to benefits. Alternatively, EAB reasoned that "employer did not establish that claimant's failure to provide a non-adulterated urine sample for testing violated any provision of the company drug and alcohol policy."

It is not disputed on appeal that employer's written drug policy satisfies the express conditions of OAR 471-030-0130(5)(c)(A). Employer asserts that EAB erred in concluding that employer failed to follow its policy when it tested claimant on March 29. Employer's policy provides, in part:

"4. PRE-EMPLOYMENT DRUG SCREENS - All prospective employees prior to being acceptable for employment on any project * * * shall be given tests for the presence of alcohol, marijuana, etc. and (prescription/non-prescription[ ]) drugs. * * * Pre-employment screening tests shall be taken prior to the employee reporting for work. In the event that the independent medical facility cannot provide results of such tests to the employer prior to the scheduled reporting time of the employee, it is understood that the employee shall be considered a probationary employee until such time as the results from the tests are known to the employer. Further, the presence of one or more of those drugs, alcohol or marijuana will be cause for rejection for employment. Refusal to submit to the screening tests will constitute voluntary withdrawal of application for employment. Positive and invalid tests results will be reported

immediately to a designated Hoffman employee on the applicable project. * * *.

"5. POST INCIDENT TESTING - Under the following circumstances any individual either directly or indirectly involved in an incident will be tested for the presence of alcohol and drugs. 1) Incident results in an injury requiring off-site medical treatment; 2) Involvement as a participant crew member in the circumstances surrounding an incident; 3) Incident results in damage to equipment and/or property.

"6. POST EMPLOYMENT TESTING - Testing may be conducted on an individual basis whenever Employer has reasonable cause to believe that an employee or a group of employees is, or may be under the influence of alcohol or drugs. Employer may conduct post employment testing project wide, up to three times in any twelve month period, without notice."

Employer's policy also defines "employee" to mean an "individual who actually performs jobsite work[.]"

■ We agree with employer that, under this policy, the March 26 test was an authorized pre-employment test. Although the policy contemplates the test being administered before an employee reports to work, the policy defines employee as a person who actually performs *"jobsite* work," and it is undisputed that claimant, although on the payroll before the test was administered, did not perform work at the job site until after he had taken the test. Similarly, that test was administered before claimant began "the performance of services" at the job site for employer. OAR 471-030-0130(6)(d). Employer suggests in its reply brief that claimant's adulteration of the March 26 sample disqualified him from benefits. However, claimant was not "discharged or suspended" as a result of the March 26 test; claimant's actions regarding the March 26 test therefore could not be a "disqualifying act" for purposes of OAR 471-030-0145(1).

■ Employer next contends that the March 29 test was a pre-employment test authorized by its policy, that claimant should be disqualified from benefits for misconduct connected with work regardless of whether employer had reasonable grounds for the March 29 test, and that, if the

March 29 test was not specifically authorized by employer's policy, it was at most a minor deviation from the policy that should not justify an award of benefits to claimant.

We turn to employer's argument that the March 29 test was, in fact, a "pre-employment" test under its policy. Even if employer's written policy was susceptible to that interpretation, such a policy could not be deemed a "reasonable employer policy" under OAR 471-030-0145 because it would conflict with the provision found in OAR 471-030-0130(6)(d) that "[n]o test administered after the worker actually begins work (the performance of services) shall be considered a pre-employment test." The second test was conducted after claimant had performed at least a day's work at employer's job site. EAB correctly concluded that the second test was not a pre-employment test.

██ As to employer's suggestion that testing that is not authorized by its policy nonetheless may provide the basis for disqualification from benefits, such a conclusion would conflict with the explicit terms of ORS 657.176(9)(a) ("an individual is considered to have committed a disqualifying act when the individual fails to comply with the terms and conditions of a reasonable policy established by the employer"); *see also Andrews v. Employment Dept.*, 166 Or App 401, 408-10, 998 P2d 769 (2000) (testing was not pursuant to "reasonable policy" where it did not meet "reasonable grounds" standard, and was not authorized by other provisions in policy). Similarly, OAR 471-030-0130(8)(a) provides that "[i]f reasonable grounds for testing exist and an employee is discharged or suspended for refusing to take a drug test, then the employee is discharged or suspended for misconduct connected with work." It follows from that rule that, if reasonable grounds for testing *do not exist* and an employee is discharged for refusing to take a drug test, then the discharge is *not* for misconduct connected with work. OAR 471-030-0130(8)(c) is even more explicit and provides that "[w]hen an employer has no reasonable grounds for drug testing, *any* discharge or suspension which is caused by the employer's requirement that an employee submit to a drug test is not for misconduct connected with work." (Emphasis added.) In sum, an employee who refuses to take a drug test for which the

employer lacks "reasonable grounds" has not committed misconduct connected with work. To the extent that employer is suggesting that adulteration of a urine sample is more than simply refusal to take a test, and constitutes misconduct independent of an employer's drug testing policy or whether an employer has "reasonable grounds" for the test in question, we disagree. First, it is undisputed that claimant was discharged for violating employer's policy and not for independent misconduct. More important, OAR 471-030-0130(8)(c) covers more than mere refusals to take unauthorized drug tests; it indicates that *any* discharge "caused by the employer's requirement that an employee submit to a drug test" is not misconduct unless the employer had reasonable grounds for the test. It is undisputed that the discharge in this case was, in fact, caused by employer's requirement that claimant submit to a drug test. Any discharge "caused" by a drug testing requirement is necessarily only indirectly caused by that requirement. Additional conduct, whether consisting of refusal to submit to the test, adulteration of a sample, or something else, inevitably will be a more direct cause of the discharge. The fact that the testing requirement is always an indirect cause, however, does not make it less real. Claimant submitted a urine sample only because employer required him to take a drug test. But for that requirement, claimant would not have been discharged. Employer's argument, although superficially tenable, cannot be reconciled with OAR 471-030-0130(8)(c).

Employer argues that the result reached by EAB in this case conflicts with the policies underlying the unemployment compensation statutes and related administrative rules. Employer notes that OAR 471-030-0130(2) provides that "[w]orkers who use drugs off the job are less productive, miss work more often, and have more on the job injuries than their co-workers who do not use drugs." Employer argues that, because the work involved was dangerous, it would have been able to institute "random, periodic or blanket" drug testing under OAR 471-030-0130(5)(c). Employer suggests that testing under the present circumstances, or dismissing an individual for adulterating a urine sample under these circumstances, is a reasonable thing to do, given the public policies involved and the dangerous nature of the

work. We rejected a similar argument in *Andrews*. In *Andrews*, the employer suggested that if an employer was entitled to conduct blanket, random or periodic drug testing, it certainly should be permitted to conduct testing of individual workers on grounds that constituted something less than "probable cause," given that blanket, random or periodic testing did not, in fact, require any cause at all. We rejected the premise that an employer could single out an employee for testing simply because it could have conducted suspicionless testing of all employees. 166 Or App at 407. We reject employer's argument in the present case for the same reason.

Contrary to employer's suggestions, neither EAB's conclusion nor ours compromises the public policies expressed by the above-quoted statutes and rules. Our decision does not dictate that an unemployment benefits claimant who is discharged for failing a drug test by adulterating a urine sample necessarily will be entitled to benefits. For example, an employer with a policy similar to employer's policy in the present case might well argue that the adulteration of a pre-employment urine sample with a commercial product designed to mask the presence of marijuana metabolites constituted reasonable cause to believe that the employee was drug-affected and thus that a *post*-employment drug test was authorized under the policy. Here, EAB found that the "employer did not show that claimant was tested for drugs because * * * reasonable cause existed to believe that he was, or might be, under the influence of drugs." Employer does not challenge that finding on review and, in fact, has advanced no argument at all that it had reasonable grounds for testing claimant pursuant to its post-employment testing policy. In short, it is not the *facts* of the case that compel the legal conclusion that we reach. Instead, because we confine our review to the arguments that employer actually has made, the failure of those arguments compels our conclusion.

EAB correctly rejected employer's argument that claimant was discharged because of the results of a pre-employment drug test. The test at issue was not a pre-employment drug test, and employer has made no argument

that the test was authorized by provisions of its drug policy other than the pre-employment provisions.[3]

Affirmed.

**LINDER, J.,** concurring.

The result in this case is difficult if not impossible to reconcile with the general policies embodied in Oregon's unemployment compensation statutes. But I agree that our conclusion is compelled by the gaps in the employer's own drug-testing policy in combination with the particular statutes and rules that apply in this circumstance. I write separately to point out that, but for the terms of OAR 471-030-0130(8)(c), which the majority discusses at 173 Or App at 428-29, I would not hesitate to conclude that a claimant's adulteration of the urine sample constitutes independently disqualifying misconduct under ORS 165.176(2)(a). The rule, however, forecloses that conclusion, perhaps inadvertently. If no greater good comes from this case, it may at least prompt the Employment Department to consider the consequences of that rule in the possibly unforeseen circumstances of this case, and to refine the rule accordingly.

Landau, P. J., joins in this concurrence.

---

[3] Because we affirm EAB's decision on the stated grounds, we need not reach EAB's alternative reasoning that failure to provide an unadulterated urine sample was not a violation of employer's drug policy.