Argued and submitted June 13,
reversed and remanded August 18, 1980

SWEZEY,
*Petitioner,*

*v.*

EMPLOYMENT DIVISION, et al
*Respondents.*

(No. 79-AB-980,
CA 16284)

615 P2d 1103

Roberta J. Lindberg, Lane County Legal Aid Service, Inc., Eugene, argued the cause and filed the brief for petitioner.

James C. Rhodes, Assistant Attorney General, Salem, argued the cause for respondent, Employment Division. With him on the brief were James M. Brown, Attorney General, Salem, and Walter L. Barrie, Solicitor General, Salem.

Jill Gough, Assistant County Counsel for Lane County, Eugene, waived appearance for respondent, Lane County.

Before Gillette, Presiding Judge, and Roberts and Campbell, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

Petitioner appeals from a decision of the Employment Appeals Board (Board) disqualifying her for unemployment benefits for an eight week period pursuant to ORS 657.176(2)(c).[1] The Board found that petitioner voluntarily left work without good cause. We reverse and remand.

Petitioner was employed by Lane County as a human services assistant from March 29, 1977, through July 17, 1979. She worked in a program known as the Socialization Outreach Program which provided services to mentally and emotionally disabled persons living in the community. As part of her program duties, petitioner conducted day-long outings for groups of these individuals and provided individual assistance to program clients on a weekly or biweekly

---

[1] ORS 657.176 provides, in part:

"(1) An authorized representative designated by the assistant director shall promptly examine each claim to determine whether an individual is subject to disqualification as a result of his separation, termination, leaving, resignation, or disciplinary suspension from work or as a result of the individual's failure to apply for or accept work and shall promptly enter an assistant director's decision if required by subsection (4) of ORS 657.265

"(2) If the authorized representative designated by the assistant director finds:

"(a) The individual has been discharged for misconduct connected with his work, or.

"(b) The individual has been suspended from work for misconduct connected with his work, or

"(c) The individual voluntarily left work without good cause, or

"(d) The individual failed without good cause to apply for available suitable work when referred by the employment office or the assistant director, or

"(e) The individual failed without good cause to accept suitable work when offered to him,

"the individual shall be disqualified from the receipt of benefits until he has performed service for which renumeration is received equal to or in excess of his weekly benefit amount in four separate weeks subsequent to the week in which the act causing the disqualification occurred."

basis. Petitioner was required to maintain records of all significant contacts with her clients. Additionally, she devoted time to grant research and development, quarterly reports for funding sources, and the maintenance of a policy manual.

Beginning in March, 1979, petitioner's workload began to increase because of staff reductions due to budget cuts. In December, 1978, the program had eight employees; by the time petitioner left in July, 1979, the staff had been reduced to two regular positions and a trainee. The number of clients being served by the program did not decrease correspondingly.

Sometime in May, 1979, petitioner began to experience physical health problems associated with stress. She suffered from headaches, teeth clenching, jaw misalignment, stomach and menstrual problems. She discussed her health problems with her immediate supervisor and the program manager. After concluding that there was nothing else to do, petitioner tendered her resignation on July 2, 1979, effective two weeks later.

Petitioner raises a number of assignments of error on appeal. We turn first to the contention that the Board's order is not supported by substantial evidence in the record that petitioner left her work without good cause. ORS 657.282; 183.482(8)(c). Substantial evidence is "any reasonable evidence or such proof as a reasonable mind would employ to support a conclusion." *Wilton v. Employment Div.,* 26 Or App 549, 551, 553 P2d 1071 (1976).

Good cause for voluntarily leaving work under ORS 657.176(2)(c) is defined by rule as cause
"* * * such that a reasonable and prudent person of normal sensitivity, exercising ordinary common sense, would leave work. The reason must be of such gravity that the individual has no reasonable alternative but to leave work." OAR 471-30-038(4).

The Board concluded that, in this case, the petitioner

failed to establish good cause for leaving her job. It found that

"[t]he claimant has established that she was suffering physical discomfort attributed to stress. Whether this was objectively related to her work is speculative in light of the fact that it seemed to continue for approximately two months after her work separation. Further, although it is not necessary to exhaust every alternative to leaving work, reasonable alternatives to becoming unemployed must be examined. In the case at hand, there is at least a possibility a transfer request would have been considered had one been filed. Also, other work outside county government could have been sought prior to resignation. Instead, the claimant quit this work in order to conduct a search for other work."[2]

---

[2] In support of its conclusions, the Board made the following findings of fact:

" 1. The claimant was employed by this employer as a Human Services Assistant from March 29, 1977 to July 17, 1979, working with the physically and mentally disabled in the employer's socialization outreach program.

" 2. Approximately March, 1979, the employer reduced its staff from 8 full and part time employees to two employees.

" 3. The number of patients being cared for did not decrease.

" 4. During the last two months of her employment, the claimant experienced recurring headaches, digestive problems, and was unconsciously severely clenching her teeth, which caused cramping in her neck and shoulder muscles.

" 5. Her dentist attributed the grinding and clenching of her teeth and the resulting head, shoulder and neck aches to stress.

" 6. The claimant considered the stress to be caused by her increased workload due to the staff reduction.

" 7. Because of the staff reduction, a leave of absence was not available to her.

" 8. The claimant had heard a transfer to another county agency was very unlikely due to budgetary problems.

" 9. She did not make formal application for a transfer.

"10. The claimant left work on July 17, 1979, after submitting notice of resignation.

"11. Prior to her separation from work, no serious attempt was made at finding other work.

Whether sufficient evidence exists to support this Board conclusion is problematical. Petitioner testified that her physical problems, which her doctor and dentist informed her were due to stress, were related to her situation at work. Both her immediate supervisor and the program manager agreed with her. Petitioner's supervisor and coordinator of the outreach program, Mr. Conley, testified that normally petitioner's job was a very stressful one. He stated that many people could not handle the stress and left after only a couple of weeks. He felt that petitioner was well qualified and a strong individual who ordinarily handled stress very well. Mr. Conley noted that petitioner began to experience difficulty when the staff was reduced and her workload greatly increased. He stated that the entire program was in a difficult situation and was not receiving the necessary support from the upper levels of the bureaucracy. Mr. Conley himself took a leave of absence from work because he felt he was under a great deal of stress. By contrast, the only evidence to support the Board's conclusion that petitioner's problems were not caused by her job is petitioner's own testimony that after she left her job she still caught herself clenching her teeth occasionally.

■ While our recitation of the evidence shows there is very little evidence—perhaps too little—to support the Board's conclusion, we are not required to so hold because, as we view the record, this was not a basis upon which the petitioner's claim for benefits had been denied. The Employment Division denied the petitioner's claim for benefits, not because it questioned the job related nature of her problems or the gravity of her situation, but because it felt that she did

"12. In her notice of resignation, she set out as the reason for leaving the pressures and stress of being understaffed and her desire to resign and look for employment elsewhere.

"13. At the time of the hearing, nearly two months after her separation from work, the claimant was still having problems with grinding and clenching her teeth."

not pursue all reasonable alternatives before quitting. Specifically, it ruled that her failure to seek a leave of absence from her job disqualified her. No mention was made of any failure to seek other work outside government.

The only issue before the referee, who found in petitioner's favor, was whether she could somehow reduce the stress she was experiencing without leaving her job. The employer, who appealed the referee's decision to the Board, did so on the ground that petitioner had other options besides quitting. The employer agreed that petitioner's physical problems were due to her situation at work. Only the Board questioned the cause of petitioner's physical discomfort. We hold that this injection of this new issue into the case was improper. *See Kuraspediani v. Employment Division,* 38 Or App 409, 590 P2d 294 (1979).

Because our disposition of this assignment of error does not dispose of the case, we turn to one other assignment of error.

■ Mr. Conley, petitioner's supervisor, discussed with petitioner the possibility of a leave of absence. He felt that a leave would disrupt the program and recommended against one. Mr. Kostenbauer, the program manager and Conley's supervisor, felt that a leave might have been available to petitioner if she had gone further with her request. He admitted, however, that the county's policy was to give leaves only when the program would not be affected. He also testified that the county had recently tightened up on leaves due to budget cuts. The Board found that, because of staff reduction, a leave was not available to the petitioner. However, the Board further found that petitioner did not exhaust all her reasonable alternatives before quitting because she did not make a formal application for a transfer and because she made no attempt to find another job before leaving. Petitioner challenges the manner in which the Board considered this alternative.

[929]

Petitioner testified that she did not seek a transfer to another county department because she thought one would not be possible due to budget cuts and the resulting hiring freeze.[3] The existence of such a freeze is not disputed. Kostenbauer stated that, despite the freeze, he felt that a request for a transfer might have been favorably considered because of petitioner's qualifications. However, he admitted that a hiring freeze means that once a position is vacant because of termination no one can be hired to fill that position. Given the existence of the hiring freeze and petitioner's awareness of that freeze, we conclude that a transfer was not an alternative that was available to the petitioner.[4]

■ The Board further held that petitioner should have at least attempted to find another job before quitting. To the extent that this holding expands the pertinent inquiry to jobs outside county employment, it appears to go further than the Division considers appropriate. Our difficulty, however, lies in our uncertainty as to just what the Division considers the pertinent rule in this area to be. In its brief to us, the Division stated,

> "In *McPherson v. Employment Division*, 285 Or 541, 591 P2d 1381 (1979), the Supreme Court indicated that the scope of 'good cause' must focus on the specific job conditions which led to the person leaving work.
>
> "In the administrative decision below, this phrase appears:
>
> '* * * It is considered that you did not pursue all the reasonable alternatives to becoming *totally unemployed.*' (Emphasis added).

---

[3] The Board's findings, *see* n 2, *supra,* do not accurately reflect the petitioner's testimony. The petitioner testified that she had been told that there was a hiring freeze, not that she heard that a transfer was very unlikely due to budgetary problems.

[4] Given our decision that a transfer to another county agency was not a reasonable alternative available to petitioner, we need not decide if seeking a transfer is a requirement, when available, under OAR 471-30-038(4).

"This language may give the impression that a wider scope was considered than simply the scope of the conditions of the job.

"This language is reminiscent of a phrase found in some of the former statutes: 'Joining the ranks of the unemployed.'

"The decision of the Employment Appeals Board makes it clear that that body looked beyond the conditions of this job: 'Also, other work * * * could have been sought prior to resignation.'

"* * * * *

"The Employment Division has no prayer to make in this matter."

If the quoted material is intended to indicate that the Division regards it as inappropriate to require a person in claimant's position to seek employment other than with her own employer, then that is certainly a value judgment the Division is entitled to make. *McPherson v. Employment Division,* 285 Or 541, 548, 591 P2d 1381 (1979). However, the material suggests that the Division is not making this judgment on its own, but instead believes the value judgment is somehow *required* by *McPherson v. Employment Division.* We find nothing in *McPherson* to justify the Division's statement that, in that opinion, "the Supreme Court indicated that the scope 'good cause' must focus on the specific job conditions which lead to the person leaving work." To the contrary, we find that the Supreme Court's opinion in *McPherson* indicates that it is for the Division to make that value judgment, and not for the courts to make it.

Accordingly, because it appears that the Division's policy in this case is predicated upon an incorrect version of what it is required to do under *McPherson,* it is necessary for us to remand this matter to the Employment Division for reconsideration in light of this corrected view of the holding in *McPherson. See*

*Oliver v. Employment Division,* 40 Or App 487, 595 P2d 1252 (1979).

Reversed and remanded.[5]

---

[5] In light of the disposition we make of this case, we need not discuss petitioner's other assignments of error.