Argued and submitted December 5, 2000, reversed and remanded for reconsideration October 31, 2001

Tom W. JOHNSON,
*Petitioner,*

*v.*

EMPLOYMENT DEPARTMENT
and Deschutes County,
*Respondents.*

99-AB-1779, 99-AB-1945; A108546

34 P3d 716

Milly Whatley argued the cause for petitioner. On the briefs were Roxanne L. Farra and Philip R. Anderson.

Kelly Knivila, Assistant Attorney General, and Mark P. Amberg, Deschutes County Legal Counsel, argued the cause for respondents. On the brief were Hardy Myers, Attorney General, Michael D. Reynolds, Solicitor General, and Lainie F. Block, Assistant Attorney General.

Before Haselton, Presiding Judge, and Wollheim, Judge, and Lipscomb, Judge pro tempore.

HASELTON, P. J.

## HASELTON, P. J.

Claimant seeks judicial review of two orders of the Employment Appeals Board (EAB). The first order denied claimant unemployment benefits on the ground that he was discharged for misconduct connected with his work. ORS 657.176(2). The second order denied claimant's request for reconsideration and to reopen the record. ORS 657.290. Because we agree with claimant that, under *Potter v. Employment Dept.*, 150 Or App 476, 946 P2d 709 (1997), EAB erroneously relied upon alleged incidents of misconduct that were not identified by employer as the basis for discharge at the hearing before the administrative law judge (ALJ), we reverse and remand for reconsideration.

The facts, except where otherwise noted, are undisputed. Claimant, a former Deschutes County employee, began working for the county in April 1987. That employment continued until early 1999, when claimant was placed on administrative leave in response to allegations that he had engaged in various forms of work-related misconduct.

After claimant was placed on administrative leave, the county contracted with a private investigation firm to investigate the allegations against claimant. Based upon that investigation, which included a review of county documents, a series of interviews with department employees, and an interview with claimant, the investigation firm prepared a report for the county detailing various ways in which claimant allegedly violated county policies. Among those allegations were suggestions that claimant had taken a boat dock from the county wood yard, had had firewood delivered to his own personal residence without paying for it, and had misappropriated other county property, including a paint sprayer and a portable generator.

The investigation firm submitted the report to Dennis Maloney, claimant's manager, who reviewed the report. On March 18, 1999, after concluding that claimant had engaged in misconduct, Maloney terminated claimant by letter. In that letter, Maloney stated:

"Based on my evaluation, as a whole, I find the allegations of wrongdoing to be true. * * * Because of your conduct, which constitutes misappropriation of County property and/or serious misuse of your position with the Deschutes County for personal gain, it is my decision to terminate your employment * * *."

Thereafter, claimant filed a claim for unemployment benefits with the state Employment Department.

The county opposed claimant's request for benefits, arguing that he had been discharged for misconduct. The Employment Department, however, disagreed and allowed benefits, concluding that claimant was

"discharged, but not for misconduct or the commission of theft in connection with your work. It has not been demonstrated that you were discharged due to any actions that were a willful disregard of your employer's interests. The employer has [the] burden to show misconduct and misconduct has not been shown."

The county requested a hearing to challenge that determination.

In the hearing before the ALJ, the county offered several pieces of documentary evidence into the record, including the investigator's report prepared on behalf of the county and the March 18, 1999, letter of termination. The county did not, however, rely on all of the various allegations of misconduct included in the investigator's report. Rather, the county reiterated its earlier, general statement that claimant had been discharged for misconduct and then identified two specific allegations of misconduct as the bases for termination: (1) claimant had taken a boat dock from the county wood yard, and (2) claimant had had firewood delivered to his personal residence without paying for delivery.

Claimant, in response, testified that he had taken the boat dock, but that he had done so with his supervisor's permission. Claimant further testified that he had paid for the firewood, and supported that claim by offering copies of receipts of his various purchases of firewood. Claimant also testified that, on one occasion, he had had firewood delivered to his home. When asked whether he had "paid for [the delivery person's] time and [the delivery of] that wood to [his]

home," claimant did not respond to the question about delivery but, instead, answered simply, "I paid for the wood."

The ALJ denied benefits on the ground that claimant had been terminated for misconduct. ORS 657.176(2)(a) (individual disqualified from receiving unemployment benefits if he or she "[h]as been discharged for misconduct connected with work"). In particular, the ALJ made two determinations that are material to our review. First, the ALJ determined that the county had not proved that claimant engaged in misconduct with respect to the boat dock. *See* OAR 471-030-0038(3)(a) (defining "misconduct" as that term is used in ORS 657.176(2)(a)). Rather, the ALJ noted that "[t]he weight of the evidence is that verbal permission had been granted to remove the item" and that, given both that permission and the county's failure to demonstrate that claimant had fraudulently obtained permission, claimant's taking of the boat dock did not constitute misconduct.

Second, the ALJ concluded that, although the county had failed to prove that claimant had taken *firewood* without paying for it, the evidence nevertheless established that claimant had failed to pay the *delivery charge*. The ALJ further concluded that, by accepting delivery of firewood without paying for delivery, claimant knowingly violated a county policy[1] and that claimant's

> "failure to follow the known policy is a willful violation of the standard of behavior expected by his employer. Claimant's conduct cannot be excused as an isolated incident of poor judgment or a good faith error. This type of breach of trust is much too serious to be excused. It was claimant's responsibility to make sure that he set an acceptable standard for the department. He did not."

Accordingly, and on that ground exclusively, the ALJ concluded that claimant was disqualified from receiving unemployment benefits.

Claimant sought review before EAB, which upheld the ALJ's decision. Specifically, EAB agreed with the ALJ's

---

[1] Claimant testified that he was aware of the county policy of charging $10 for delivery of firewood and acknowledged that, in fact, he had drafted the policy on behalf of the county.

conclusion that claimant's taking of the boat dock did not constitute misconduct, and also agreed with the ALJ that claimant had wilfully failed to pay the county the required firewood delivery fee:

> "When the employer's representative asked claimant whether he paid for the cost of a county employee delivering his firewood, claimant replied, 'I paid for the wood.' * * * Examining that remark in context, we conclude that claimant's reply was intentionally non-responsive, and we infer from it that claimant failed to pay the county the required delivery fee. Further, considering the fact that claimant was the one who created the county's procedures for the sale of firewood to private individuals, and given claimant's lack of explanation for failing to pay the delivery fee, we conclude that claimant's failure was wilful."

EAB did not, however, limit its consideration to those two matters. Instead, EAB cited, as "additional wilful violations of the employer's expectations," two alleged instances of misconduct that were included in the investigator's report but had not been at issue in the proceedings before the ALJ. In particular, as additional examples of misconduct, EAB cited the fact that claimant had "loaned a county generator to an individual to provide power to his home" and had "loaned a county paint sprayer to a private party, for him to conduct his trade." EAB concluded that, because claimant had engaged in wilful misconduct in violation of the county's expectations on "several different occasions[,] his actions cannot be excused as an isolated instance of poor judgment." Accordingly, EAB denied unemployment benefits.

Claimant subsequently filed a motion for reconsideration and to reopen the record. Claimant argued that, because the county had never argued at the hearing that he was terminated for lending county equipment to private parties, the record should be reopened to allow him to respond to that new matter raised and relied on by EAB *sua sponte*. In particular, claimant sought to submit Maloney's sworn testimony from an earlier grievance hearing which, according to claimant, would have shown that, in Maloney's view, claimant's lending of county equipment was not an independent basis for his dismissal. Claimant also argued that EAB

should reconsider its finding that claimant did not pay the $10 firewood delivery fee. EAB denied claimant's motion because it "was based on new evidence that was not part of the record we reviewed, and claimant did not show that anything beyond claimant's reasonable control prevented the production of that evidence at the time of the hearing." Claimant filed a timely petition for judicial review from both EAB orders.

On judicial review, claimant advances several assignments of error challenging: (1) EAB's finding that he failed to pay the $10 firewood delivery fee; (2) EAB's consideration of allegations of misconduct and grounds for discharge that the county had not explicitly raised in the hearing before the ALJ; (3) EAB's determination that claimant's alleged misconduct was not an "isolated instance of poor judgment" or a "good faith error"; and (4) EAB's denial of claimant's motion for reconsideration and to reopen the record.

At the outset, we reject claimant's challenge to EAB's finding that claimant had failed to pay the required fee for delivery of the firewood, in violation of county policy. We conclude, without further discussion, that substantial evidence supports that finding. We proceed then to the central, and ultimately dispositive, question—whether EAB impermissibly rested its disposition on grounds of misconduct and discharge not urged by the county at hearing. *See Potter*, 150 Or App at 479.

In *Potter*, the claimant sought unemployment benefits, and the employer objected, arguing that benefits should be denied because the claimant had been discharged for misconduct, *viz.*, violating the company's drug and alcohol policy. 150 Or App at 478. To support that position, the employer presented evidence that the claimant was terminated after his supervisor smelled alcohol on his breath. The ALJ allowed benefits, and the employer sought review, arguing that there was evidence sufficient to show misconduct. EAB denied benefits, but on a basis never urged by the employer, *viz.*, that the claimant had voluntarily left work without good cause. ORS 657.176(2)(c). We reversed EAB:

"On judicial review, claimant contends that EAB erred in deciding this case on grounds not argued by the parties. We agree. Employer has maintained throughout this action that claimant was discharged for misconduct, and that was the sole issue before EAB. Employer has not asserted that claimant was not entitled to benefits because he voluntarily left work without good cause." *Id.* at 479.[2]

As support for that holding, we cited our decisions in *Kuraspediani v. Emp. Div.*, 38 Or App 409, 590 P2d 294 (1979), and *Chapman v. Employment Division*, 62 Or App 676, 662 P2d 19, *rev den* 295 Or 730, 731 (1983).

In invoking *Potter*, claimant here urges a broad reading and application of *Potter* as precluding EAB from relying on any "grounds not argued by the parties." Specifically, claimant argues:

"Neither the word 'generator' nor 'paint sprayer' was ever mentioned at the hearing, and the County never argued that Claimant was discharged for lending out these items. Claimant could not reasonably have been expected to 'rebut' factual allegations that were never fairly raised or argued, especially since Claimant's manager Dennis Maloney had already testified he did not terminate Claimant for these reasons."

Conversely, the county and the Employment Department (respondents) do not read *Potter* as so constraining EAB. In their view, *Potter* simply precludes EAB from basing a denial of benefits on a different statutory ground (*e.g.*, "misconduct," ORS 657.176(2)(a), versus "voluntary departure," ORS 657.176(2)(c)) than that litigated by the parties. However, respondents posit, once such a general statutory basis has been raised, EAB can consider any and all matters within that generic ground, regardless of whether the

---

[2] After *Potter*, in 1999, the legislature amended ORS 657.275(2) to give EAB discretion to address all issues

"raised by evidence in the record, including but not limited to the nature of a separation, notwithstanding the scope of the issues raised by the parties, the arguments set forth in a party's application for review or the parties' written or oral arguments."

The parties do not dispute that, notwithstanding that legislation, *Potter* is still applicable to claimant's claim, which was filed before the amendment's effective date of October 23, 1999. Or Laws 1999, ch 1067, § 8. We imply no view as to the correct result if the amended statute were applicable in this instance.

employer has raised and argued those matters. Thus, in respondents' view, if an employer contends that "misconduct" is the basis for denial of benefits, EAB may consider all evidence of misconduct in the record, even if the employer at hearing argued that one particular type of misconduct justified the denial of benefits. Here, respondents urge, the county's generic references at hearing to "misappropriation," coupled with the investigative report's reference to claimant's alleged loaning of a county generator and paint sprayer to third parties, permitted EAB to base its decision, in part, on claimant's misappropriation of those items, notwithstanding that the county never argued at hearing that that conduct warranted the denial of benefits.

The issue thus turns on how broadly, or narrowly, *Potter* should be read. That, in turn, requires a review of the precedent underlying *Potter*.

*Potter* is rooted, ultimately, in *Kuraspediani*. There, the Employment Division denied the claimant unemployment benefits on the basis that the claimant was discharged for misconduct connected with work. ORS 657.176(2)(a). The ALJ allowed benefits, finding that the claimant had been discharged, but not for misconduct, and the employer sought review. EAB denied benefits on a different ground, concluding, instead, that the claimant had voluntarily resigned without good cause. ORS 657.176(2)(c). The claimant sought judicial review, arguing that the issue of voluntary resignation had not been advanced by the employer at hearing and that the Board's reliance on that issue was error. We agreed, concluding that EAB's "injection of this new issue at this stage of the proceedings denied claimant the opportunity to be heard on whether he quit work without good cause." *Kuraspediani*, 38 Or App at 413.

*Swezey v. Employment Division*, 47 Or App 923, 615 P2d 1103 (1980), decided the next year, was similar. There, the issue was whether the claimant, who had resigned from her job, had done so without good cause. The only issue at hearing was whether the claimant could have reduced the stress she was experiencing without leaving her job. The ALJ awarded benefits, and the employer appealed, arguing that the claimant had other options besides quitting. EAB

reversed but, rather than discussing the issues raised by the parties, instead concluded that the claimant's stress was not caused by her work at all. On judicial review, we reversed, relying on *Kuraspediani*. We held that EAB's disposition based on the issue of causation—an element of the claimant's claim that was not disputed by the parties below—was error. *Id.* at 926-29. That was so regardless of whether the unlitigated ground on which EAB's decision was based was supported by substantial evidence in the record. *Id.* at 928.

■ *Chapman* is also illustrative. There, "misconduct" was the only ground for denial of benefits urged to the ALJ; but EAB, in sustaining the denial of benefits, determined that the claimant had voluntarily left her work. *Chapman*, 62 Or App at 678. We reversed and, particularly, rejected the Department's argument that the general issues raised in the notice of hearing were sufficient to raise the issue of voluntariness:

> "The rationale of *Kuraspediani* is that injection of new issues at [the] EAB stage may deny the claimant the opportunity to be heard on that issue. The parties have proceeded on the basis that claimant was fired and employer does not argue otherwise. *The hearing focused on claimant's work performance.* The [Department] contends that any case involving a work separation issue must begin with the threshold determination whether claimant was discharged or quit and argues therefore that the question was necessarily addressed. However, *the emphasis given that determination at hearing can affect the subsequent focus of the hearing. In this case, had it been clear at the hearing that the manner of work separation was seriously questioned, then the related issue whether, if claimant had left voluntarily, it was for 'good cause' could have been developed. The [Department] assumes that 'the facts' naturally appear on the record unaffected by the focus of the parties and the referee at the hearing.*"[3] *Id.* at 680 (emphasis added).

Although *Potter* and its antecedents involved different factual situations, they share a common core—a core of

---

[3] We reached similar results in other cases. *See, e.g., Cascade Corp. v. Employment Div.*, 104 Or App 238, 240, 800 P2d 305 (1990) (following, without significant discussion, the holdings in *Chapman* and *Kuraspediani*); *de St. Germain v. Employment Division*, 74 Or App 484, 491, 703 P2d 986 (1985) (same).

adversarial fairness and, concomitantly, complete record development. That core is manifest in *Kuraspediani*'s decrying of the denial of the claimant's "opportunity to be heard," 38 Or App at 413, and in *Chapman*'s recitation of the truism that issue identification drives record development, 62 Or App at 680. Indeed, the same concerns underlie our own preservation requirements, which generally preclude a reviewing court from basing its disposition on grounds not raised and developed below:

> "[R]equiring a party to present its issues at each adjudicative level is essential to a fair process for the other parties and participants. Generally, the opportunity to respond at the appellate level does not cure the denial of that opportunity in trial court and agency proceedings, where all of the factual and much of the legal development of cases must occur." *J. Arlie Bryant, Inc. v. Columbia River Gorge Comm.*, 132 Or App 565, 568, 889 P2d 383, *rev den* 321 Or 47 (1995).

*See also Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001) (while a reviewing body can generally affirm a lower court's ruling on alternative grounds, invocation of the "alternative grounds for affirmance" doctrine is appropriate only in instances where, *inter alia*, "the record [would] materially be the same one that would have been developed had the prevailing party raised the alternative basis for affirmance below").

■ In the unemployment benefits context, the employer bears the burden of proving that a claimant is *not* entitled to benefits. *Willamette Graystone, Inc. v. Hammond*, 151 Or App 561, 565, 951 P2d 166 (1997) (the employer, which had the burden of proving misconduct connected with work, could not later complain that the claimant did not raise an issue in the hearing in which the employer had the burden).[4] Implicit in *Potter* and its antecedents is a recognition that, given that allocation, it was incumbent upon the employer to frame the dispute by identifying the alleged grounds for denial with sufficient particularity so as to alert the claimant and afford

---

[4] *See also Hoffman Construction Co. v. Employment Dept.*, 173 Or App 420, 429, 21 P3d 1098 (2001) (suggesting that, under ORS 657.176(2), the employer has the burden to demonstrate a causal connection between the employee's discharge and the asserted misconduct).

a full and fair opportunity for record development. "Sandbagging" was precluded—either by the employer or by EAB.

■        Applying that principle here, we agree with claimant that EAB erred in relying upon claimant's alleged misconduct involving the paint sprayer and generator. As the ALJ observed,

> "The employer had various allegations about the reasons for the claimant's discharge. *At the hearing, the employer focused on only two issues, that is, the allegation that he did not pay for wood purchased from the wood lot and the allegation he took a boat dock*." (Emphasis added.)

Thus, the county did not rely on other supposed instances of misconduct so as to alert claimant that those matters were potential bases for denial of benefits. In particular, and consequently, claimant was not alerted to the need to develop an adversarial record as to misappropriation of the generator and the paint sprayer.

We note, moreover, that if the county had raised and relied on that alleged "misconduct" at the time of the evidentiary hearing before the ALJ, claimant could, in fact, have adduced contradicting evidence. As noted, after EAB issued its decision denying benefits, relying in part on the unlitigated grounds, claimant moved to reopen to present evidence, *viz.*, Maloney's prior grievance hearing testimony that claimant had not been discharged because of the alleged loans of the paint sprayer and the generator. EAB denied that motion. Thus, claimant was, in effect, whipsawed—he had no reason to develop evidence before the ALJ as to the alleged paint sprayer and generator loans, and then, when EAB interjected those matters *sua sponte*, he was denied the opportunity to present controverting evidence at that point.

That sort of whipsawing cannot be squared with *Potter* and its antecedents. Consequently, the Board erred in relying on claimant's alleged misappropriation of the paint sprayer and generator in denying benefits.

Given that error, a remand is required. In particular, because EAB relied on the paint sprayer and generator matters, it had no occasion to determine whether the one instance of misconduct that it properly concluded occurred—

claimant's failure to pay the firewood delivery fee—would, by itself, warrant the denial of benefits, or whether that misconduct alone constituted an "isolated instance of poor judgment" or the product of a "good faith error" within the meaning of OAR 471-030-0038(3)(b).[5] Consequently, we reverse and remand to EAB to determine whether the firewood misconduct, by itself, was an isolated instance of poor judgment or the result of a good faith error.[6]

Our disposition obviates any need to address claimant's remaining contentions.

Reversed and remanded for reconsideration.

---

[5] OAR 471-030-0038(3)(b) provides, in part: "Isolated instances of poor judgment [and] good faith errors * * * are not misconduct."

Here, EAB referred both to the delivery fee and equipment loan "misconduct" in determining that claimant's actions were not an "isolated instance of poor judgment" or the product of a "good faith error":

"Claimant violated the employer's expectations on several different occasions; his actions cannot be excused as an isolated instance of poor judgment. Further, claimant presented no evidence to show that he held a good faith belief that the employer would allow him to purchase firewood without paying for its delivery or would allow him to lend county equipment to private individuals; claimant's actions were not the result of a good faith error."

[6] See MacKillop v. Employment Dept., 172 Or App 207, 213, 18 P3d 461 (2001) (quoting Linville v. Employment Dept., 146 Or App 317, 323, 934 P2d 442 (1997), for the principle that, in order to deny benefits, the Board must determine both that the claimant engaged in misconduct as defined by OAR 471-030-0038(3)(a) and that the exclusions from the definition of misconduct in OAR 471-030-0038 are inapplicable).