Argued and submitted March 15, 2002, affirmed January 8, 2003

ALASKA TANKER COMPANY,
*Petitioner,*

*v.*

EMPLOYMENT DEPARTMENT
and Sean D. Walker,
*Respondents.*

01-AB-1057; A115164

61 P3d 276

Michael T. Garone argued the cause for petitioner. With him on the brief was Schwabe, Williamson & Wyatt, P.C.

No appearance for respondents.

Before Edmonds, Presiding Judge, and Kistler and Schuman,* Judges.

SCHUMAN, J.

---

* Schuman, J., *vice* Armstrong, J.

**SCHUMAN, J.**

The Employment Appeals Board (EAB) held that claimant was entitled to full benefits for a period of unemployment, rejecting employer's argument that benefits should be reduced by the amount of vacation pay that employer contributed to claimant's union on claimant's behalf. We review the EAB's factual findings for substantial evidence and its legal conclusions for errors of law. ORS 183.482(8); *Hoffman Construction Co. v. Employment Dept.*, 173 Or App 420, 422, 21 P3d 1098 (2001). We affirm.

The following relevant facts are taken from the EAB's findings and are supported by substantial evidence. Claimant works for employer as a seaman. He is a member of the Seafarer's International Union (the union). Under the union's collective bargaining agreement with employer, members can work a maximum of 120 consecutive days aboard one of employer's ships before they must rotate off the ship and take a compelled "vacation" for a certain time. During the time aboard, they accrue one day of vacation pay for every two days worked. The agreement also specifies that, instead of paying members on compelled vacation directly, the employer contributes to the Seafarer's Vacation Plan (a union-managed trust fund) an amount equal to each member's daily pay for every vacation day that the member accrues. Members then have up to 15 months from the end of the employment period to apply to the union for the benefits. If they do not do so within that time, they forfeit them.

On January 24, 2001, claimant debarked after about 111 days aboard and began a period of unemployment. At the time, he had accrued about 56 days of vacation time. Employer had paid into the plan an amount equal to 56 days' pay. Claimant could have, but was not obligated to, request that pay from the union. As of the date of his hearing, he had not done so. Instead, he filed for unemployment benefits.

Employer argues that, under ORS 657.150(6) and (7), claimant's unemployment benefits should have been reduced by the amount of vacation pay that employer had paid to claimant's union plan. Because that amount exceeded the amount of claimant's benefits, employer argues that

claimant should receive no unemployment benefits at all. Claimant, on the other hand, argued to the EAB that, under the plain terms of the statute, his unemployment benefits are reduced only by the amount of vacation pay that has actually been paid to *him*. He contended that, if he chooses to draw unemployment during one period of compelled vacation and delay applying to the union for accumulated vacation pay until a future one, that is his option. The EAB rejected employer's argument and accepted claimant's.

■ To resolve this case, we must construe ORS 657.150(6) and (7). Under subsection (6), an unemployed person who "has employment" in any week has his or her benefits for that week reduced by the amount he or she has earned from the employment (with certain adjustments not relevant here). ORS 657.150(7) then describes the circumstances in which an individual who receives vacation or holiday pay "has employment" and therefore has that pay deducted from benefits:

> "Payment which has been, is or will be paid to an individual for a holiday or vacation shall be considered as earnings in the determination of the amount of benefits payable with respect to the week in which the holiday or vacation falls * * *. However, if payment for the holiday or vacation is paid more than 45 days prior to the holiday or vacation or is delayed more than 45 days following the end of the week in which the holiday or vacation falls, the provisions of this section do not apply and previously reduced benefits shall be adjusted accordingly."

Employer argues first that the applicability of ORS 657.150(7) does not depend on receipt of vacation pay by an employee but on payment by an employer. That argument, however, conflicts with the statute's plain language. Vacation pay that counts against benefits includes only that which "has been, is or will be paid *to an individual*." ORS 657.150(7) (emphasis added). The statute does not focus on who pays (it does not even mention an employer) but on who receives pay. That recipient must be an individual, not a union or a vacation pay plan. As of the time of the hearing in this case, no payment had been made to any individual and whether it

"will be" paid in the future depends on whether claimant applies for and receives it.[1]

■■ Further, even if employer's payment to the union plan constituted payment for purposes of the statute, neither the Employment Department nor the EAB determined whether employer paid into the union plan in the appropriate time period, that is, within the period beginning 45 days before the start of claimant's compelled vacation and ending 45 days after the end of the week in which the vacation fell. ORS 657.150(7). The record contains no information from which that determination could be made. Payments outside of that time period are not deducted from benefits. Because employer is the party arguing that claimant's benefits should be reduced, employer bears the burden of proof on that issue. *See, e.g., Johnson v. Employment Dept.*, 177 Or App 464, 474, 34 P3d 716 (2001). On this record, then, the EAB did not err in concluding that claimant's benefits should not be reduced by vacation pay.

■ As an alternative argument, employer contends that claimant has "constructively received" the vacation pay. In defining constructive receipt of income, we have noted that " 'the essential point is that [one] must have an unqualified right to the use and enjoyment of the money * * * deemed to be income.' 85 CJS, 'Taxation,' § 1096(c). (Footnotes omitted.)" *Perlenfein and Perlenfein*, 114 Or App 588, 592 n 3, 836 P2d 171 (1992), *aff'd in part and rev'd in part*, 316 Or 16, 848 P2d 604 (1993). That definition matches the one suggested implicitly by employer, who argues that claimant constructively received his vacation pay because he enjoyed "unfettered access" to it.

Even if we were to conclude that the concept of "constructive income" applies outside of taxation, child support, and spousal support, that conclusion would not help employer here. Again, the record is fatally incomplete. It does not provide enough information to resolve the issue of constructive receipt. Whether or not claimant had "unfettered

---

[1] If a claimant receives unemployment benefits and then applies for and receives vacation pay from the union plan, that situation would raise issues that are not before us and that we do not decide.

access" or "an unqualified right to the use and enjoyment of" his accrued vacation pay depends on a number of facts. Were the arrangements between employer, the union, and claimant such that employer deposited money in an account in claimant's name, held for him by the union, with the union acting more or less as a bank? Or did employer contribute to a general "vacation pay" trust account in control of the union, to be distributed as the union saw fit? An employee of the Employment Department testified that the department regarded the vacation funds as being "in an account * * * similar to a savings account." She also testified that, according to the department's manual, "[i]f the vacation pay is deposited with the union, workers apply to the union for their vacation pay. The payment, in effect, goes to savings account managed by the union." That testimony, however, is not based on or tied to the specific contract between claimant and employer. Nor does it explain the ways in which the account is "similar" to a savings account. Was claimant taxed on the income? Did he receive interest on it? Was his access truly unconditional? Why do claimant, employer's representative, and the EAB all refer to claimant's need to "apply for" or "request" the funds? The record establishes that claimant is not eligible to receive the pay unless he has worked for 120 days and that he forfeits it if he does not receive it within 15 months of his last employment. Are there other conditions? In short, viewed as a whole—including what it omits as well as what it includes—the record provides substantial evidence to support the EAB's finding that claimant did not constructively receive the vacation pay.

Affirmed.